70 U.S. 304
 18 L.Ed. 245
 3 Wall. 304
 MINING COMPANY
v.
BOGGS.
 December Term, 1865
 
 BOGGS, lessee of Fr emont, brought a suit in one of the inferior State courts of California against the Merced Mining Company, for the possession of certain mineral lands, with the mines therein, situated in Mariposa County.
 The case, according to a frequent practice in the courts just named, was submitted to the court, both as to matters of fact and matters of law, without a jury. The recovery was resisted on several grounds. Among them was possession of the land—prior to any claim of the lessor of Boggs—'according to the usages and regulations established and in force in the mining district within which it was, for the purpose of extracting the gold from the rock;' by which prior possession of the said mineral lands and appropriation of the quartz veins therein, the mining company asserted itself to have acquired a perfect right thereto.
 The pleadings nowhere developed more fully than as above the nature of the title thus set up by way of defence; nor indeed did anything else in the record brought here; though as matter of fact it was no doubt, the reporter supposes, meant to be rested on what was a subject of general knowledge; to wit, that the United States had impliedly, and to a greater or less extent, allowed persons to take possession of and to work the mining lands of the Pacific coast, though such persons had no patent for them from it.[1] Under an agreement, too, between the attorneys in the case, the defendant had the right to set up in defence any matter which could be the subject of a bill in equity.
 The court in which the suit was brought found, as matter of fact, that the premises sued for had been granted by the United States to Boggs's lessor; and that, in virtue of his lease, Boggs became and still was owner of them; that the Mining Company, defendant in the case, was in possession of them, without the consent and against the will of the plaintiff, and was guilty of the trespass alleged.
 It found, also, that in May, 1851, prior to the date of the lease to Boggs, the premises were vacant; that the Mining Company entered upon them under one Moffat; but it was not shown that the said Moffat himself had any title; but, on the contrary, the premises were then the public domain of the United States, except in so far, &c.; that the Mining Company commenced improving the premises for mining purposes in 1851, and had ever since used and occupied them for such purposes, 'pursuant to the mining regulations prevailing in the district,' and had made improvements and expenditures to the extent of more than eight hundred thousand dollars. But the court found, also, that the plaintiff was not estopped from asserting his title, and, on the whole case, found in his favor. Judgment went accordingly for him.
 The case then went up to the Supreme Court of the State. That court, in its opinion (which was not, however, any part of the record), recapitulating the case, and noting that one ground relied on to defeat the recovery was 'a license from the government to enter on the premises and extract the gold,'—thus proceeded:
 'If the company has a right to the possession and use of the land as against its true owner, for the purpose of extracting the precious metals, it must be upon the ground that the mineral does not pass with the soil as an incident to it, but belongs either to the United States or to the State of California, and that the defendant has an effectual license to enter on the premises and extract them. . . ..
 'Assuming, for the purpose of this case, that the mineral belongs to the United States, has the defendant any such license?
 'It is sometimes said, in speaking of the public lands, that there is a general license from the United States to work the mines which these lands contain. But this language, though it has found its way into some judicial decisions, is inaccurate as applied to the action, or rather want of action, of the government. There is no license, in the legal meaning of that term. A license to work the mines implies a permission to extract and remove the mineral. Such license from an individual owner can be created only by writing, and from the General Government only by act of Congress. It carries an interest in the land, and arises only from grant. The mineral, whether a distinct possession or otherwise, constitutes part of the realty, as much so as growing timber, and no interest in it can pass except in the ordinary modes for the disposition of land. It is under the exclusive control of Congress, equally with any other interest which the government possesses in land. But Congress has adopted no specific action on the subject, and has left that matter to be controlled by its previous general legislation respecting the public domain. And it is from its want of specific action, from its passiveness, that the inference is drawn of a general license. The most which can be said is, that the government has forborne to exercise its rights; but this forbearance confers no positive right upon the miner which would avail as a protection against the assertion of its claims to the mineral. The supposed license from the General Government, then, to work the mines in the public lands, consists in its simple forbearance. Any other license rests in mere assertion, and is untrue in fact, and unwarranted in law.'
 That court accordingly affirmed the judgment; and the Mining Company brought the case here, considering that it fell within the 25th section of the Judiciary Act of 1789, which gives a right of re-examination in this court in cases where there has been drawn in question, in the highest court of law or equity in a State, 'the validity of a treaty or statute of or an authority exercised under the United States, and the decision is against their validity;' which statute, however, also enacts that 'no other error shall be assigned or regarded as ground of reversal in any such case as aforesaid than such as appears on the face of the record, and immediately respecting the before-mentioned questions of validity or construction, &c.'
 Mr. David Dudley Field, representing here the defendant in error, having moved to dismiss the case, as not within the provision of the statute, and stated fully the grounds of his motion[2]—to wit, that it must clearly appear on the record that an authority exercised under the United States was distinctly presented—that it 'did arise and was applied'—and that the decision was against the authority so set up; and arguing that a mere forbearance by the government to assert rights was not an 'authority' to take the minerals—Mr. Reverdy Johnson was heard contra:
 He contended that, by the laws of Mexico, from which this region came to us, a grant of the mere land did not carry the minerals under it; that the law of England was apparently the same as respected the government, and that this appeared by the Case of the Mines reported by Plowden;[3] that in the case at bar, the grant by the United States to Boggs's lessor, Fr emont, had passed no metals; and that, so far as Fr emont was concerned, these still belonged to the United States. He referred to the fact, as well known, that a special system of law had grown up in the mining States, by which possessory claims, though perhaps, in a view purely abstract, trespasses against the United States, had been long impliedly protected and upheld by the National Government, and had recently been even the subject of protection by statute.[4] This court had also recognized the value of such claims independently of the statute. In Sparrow v. Strong[5] the court said it was impossible to shut our eyes to the public history which informs us that, under Territorial and State legislation, and 'not only without interference by the National Government, but under its implied sanction, vast mining interests have grown up, employing many millions of capital, and contributing largely to the prosperity and improvement of the whole country.' It was of course under this implied authority from the government that the Mining Company rested their case, as to one of its defences, in the court below. The lands were confessedly mineral lands. The suit was for the mines as well as for the lands.
 The company asserted, among other things, that they were in prior possession, 'according to the usages and regulations established and in force in the mining district, for the purpose of extracting gold from the rock;' plainly making it to be understood that they were there in the only way in which they could so be there, to wit, under the authority of the United States; whether a permissive authority or one by direct grant, it mattered not. Either was enough to make the party there rightfully. The court below decided against the authority so set up under the United States. The decision was as matter of law; or, to use the court's own language, there was 'no license within the legal meaning of that term.' Nothing short of an act of Congress, the court considered, could constitute a license; that forbearance was all that existed here, and that forbearance was not enough; it alone conferred 'no positive right.' The decision, therefore, was plainly on law as well as on fact; or on law alone, fact being assumed.
 The CHIEF JUSTICE delivered the opinion of the court.
 
 
 1
 No question is raised by the pleadings, of which this court has jurisdiction upon writs of error to the Supreme Court of California, unless by the allegation of prior possession of this land for the purpose of taking out the minerals. But this allegation does not set up any authority exercised under the United States in taking such possession, nor any treaty or statute of the United States, in virtue of which it was taken. Nor does it anywhere appear from the record that the decision of the State court was against the validity of any such authority, treaty, or statute. The case brought before us is, therefore, wanting in the requirement made essential to our jurisdiction by the 25th section of the Judiciary Act.
 
 
 2
 If we were at liberty to look into the opinion of the court for the purpose of ascertaining what questions were made on the argument, and decided by the court, we should find that, upon a liberal construction of the stipulations of counsel, the defendants were allowed to insist that they were warranted in their possession of the lands, for the purpose of extracting the minerals, by a license inferred from the general policy of the State or of the United States, in relation to mines of gold and silver and the lands containing them.
 
 
 3
 We doubt whether such a claim, even if made in the pleadings, would be such an allegation as would give jurisdiction to this court.
 
 
 4
 However that may be, there was no decision of the court against the validity of such a license. The decision was, that no such license existed; and this was a finding by the court of a question of fact upon the submission of the whole case by the parties, rather than a judgment upon a question of law.
 
 
 5
 It is the same case, in principle, as would be made by an allegation in defence to an action of ejectment, of a patent from the United States with an averment of its loss or destruction, and a finding by the jury that no such patent existed, and a consequent judgment for the defendant. Such a judgment would deny, not the validity, but the existence of the patent. And this court would have no jurisdiction to review it.
 
 The writ of error must, therefore, be
 
 6
 DISMISSED.
 
 
 
 [1]
 See Strong v. Sparrow, supra, pp. 99, 100, 104; and the Appendix, No. 1.
 
 
 [2]
 Citing Day v. Gallup, 2 Wallace, 97; Towle v. Farney, 1 Black, 350; Hoyt v. Shelden, Id. 520; Maxwell v. Newbold, 18 Howard, 515; and earlier precedents.
 
 
 [3]
 Page 310.
 
 
 [4]
 'No possessory action between individuals in any of the courts of the United States for the recovery of any mining title, or for damages to such title, shall be affected by the fact that the paramount title to the land on which said mines are, is in the United States; but each case shall be adjudged by the law of possession.' (Act of February 27, 1865, 13 Stat. at Large, 441.)
 
 
 [5]
 Supra, 104.