## Republican River Bridge Company *v.* Kansas Pacific Railroad Company.

1. The decision of the highest State court in which such decision could be had, adverse to a right under an act of Congress set up in a chancery suit or in any other case, where all the evidence becomes a part of the record in that court, the same record being brought here, can be re-examined upon the law and the facts, as far as may be necessary to determine the validity of

that right. In a common-law action, where the facts are passed upon by a jury, or by a State court, or by a referee, to whom they have been submitted by waiving a jury, where the finding is by the State law conclusive, this court has the same inability to review those facts as it has in a case coming from a circuit court of the United States.

2. Congress, by joint resolution, granted to the defendant, subject to the approval of the President, "fractional section one" on the west side of a military reservation, provided the usefulness of the latter would not, in his opinion, be impaired for military purposes. The President, by an executive order, set aside to the defendant said fractional section as designated on a map of survey accompanying the letter of the Secretary of the Interior. The court which tried the facts having found that the fractional section was inside of the reservation, was in the possession of the defendant, and was the land claimed in this action, held that the title thereto was vested in the defendant. *Held*, 1. That the finding being upon a mixed question of law and fact, and largely depending for its correctness on surveys not produced here, and there being no plat in the record, was not open to inquiry. 2. That looking to the manifest intent of the joint resolution, and to the fact that the grant was not to be consummated until the President had determined that the usefulness of the reservation would not be thereby impaired, the description in the joint resolution meant such a fractional section *within* the reservation on its west side. 3. That the title of the defendant became absolute on the issue of the President's order, and had relation back to the date of the passage of the joint resolution.

ERROR to the Supreme Court of the State of Kansas.

*Mr. Robert McBratney* for the plaintiff in error; and *Mr. William T. Otto*, contra.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Supreme Court of the State of Kansas. The contest in the State court concerned the title to real estate, both parties claiming under grants from Congress made at different times. In the District Court for the County of Shawnee, where the suit was originally brought, the parties submitted the case to the court without the intervention of a jury; and that court found a series of facts, fourteen in number, on which it declared the law to be for the defendant. This judgment was affirmed on error in the Supreme Court of the State, which decision the present writ of error brings before us.

The finding by the District Court was received by the Supreme Court of the State as conclusive as to all facts in issue, and it is equally conclusive upon us. Where a right is set up under an act of Congress in a State court, any matter of law found in the record, decided by the highest court of the

State, bearing on the right so set up under the act of Congress, can be re-examined here.

In chancery cases, or in any other class of cases where all the evidence becomes part of the record in the highest court of the State, the same record being brought here, this court can review the decision of that court on both the law and the fact, so far as may be necessary to determine the validity of the right to set up under the act of Congress; but in cases where the facts are submitted to a jury, and are passed upon by the verdict, in a common-law action, this court has the same inability to review those facts in a case coming from a State court that it has in a case coming from a circuit court of the United States.

This conclusiveness of the facts found extends to the finding by a State court to whom they have been submitted by waiving a jury, or to a referee, where they are so held by State laws, as well as to the verdict of a jury. *Boggs* v. *The Merced Mining Co.*, 3 Wall. 304.

Two propositions of law ruled by the State court were excepted to by plaintiff, the first of which gives construction to the grant under which defendant claims the land, and the other to the grant under which the plaintiff claims. The first is in the following language: —

"That the joint resolution passed by Congress, approved July 26, 1866, was and must be construed as a grant by Congress to the defendant of the land in controversy; and that upon the issuance of the executive order of the President, dated July 19, 1867, the legal title to said land vested in defendant, and relates back to the date of the passage of said joint resolution of July 26, 1866."

The joint resolution here referred to is as follows: —

"*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That, subject to approval by the President, the right of way one hundred feet in width is hereby granted to the Union Pacific Railroad Company, and the companies constructing the branch roads connecting therewith, for the construction and operation of their roads over and upon all military reserves through which the same may pass; and the President is hereby authorized to set apart to the Union Pacific Railroad Company, eastern division, twenty acres of the Fort Riley

Military Reservation for dépôt and other purposes in the bottom opposite ' Riley City;' also fractional section ' one,' on the west side of said reservation, near Junction City, for the same purposes; and also to restore from time to time to the public domain any portion of said military reserve over which the Union Pacific Railroad or any of its branches may pass, and which shall not be required for military purposes; provided that the President shall not permit the location of any such railroad or the diminution of any such reserve in any manner so as to impair its usefulness for military purposes, so long as it shall be required therefor."

On the nineteenth day of July, 1867, the President, by an executive order, declared that, by virtue of said resolution, there is set apart to the Union Pacific Railroad Company, eastern division (which was then the corporate name of the defendant), the twenty acres of the Fort Riley military reservation, and fractional section one, on west side of said reservation, near Junction City, for a dépôt and other purposes, as designated on a map or survey accompanying the letter from the Secretary of the Interior of Feb. 15, 1867.

The first objection made here to the conclusion of law by the court, that the resolution and order confer title to the land in controversy, is that the land of which defendant is in possession as fractional section one is a part of the reservation; whereas the true construction of the joint resolution is, that it has reference to a fractional section one lying outside of the reservation, and adjoining it on the west side.

No plat or survey, official or otherwise, accompanies this record to enable us to understand or decide this question in a satisfactory manner; nor is this map or letter of the secretary in evidence. The circuit judge, among his findings of fact, states distinctly that the fractional section one referred to in the joint resolution is *inside* of the reservation, and is the piece of land now in possession of the defendant, and claimed by plaintiff in this action. So far as the correctness of this finding depends, as it must largely depend, on surveys not produced to us, it is not open here to inquiry; and as it must from its very nature be a mixed question of law and fact, which would be concluded by the verdict of a jury, it must be equally conclusive here; the law question being the construction of the

words of the grant, and the fact being the manner in which the existing government surveys were made and numbered in reference to the fractional parts of section one.

Looking, however, to the manifest intent of the joint resolution, to the fact that neither the grant of the twenty acres confessedly a part of the reservation, nor of the fractional section one, was to be consummated until the President had determined that both could be given up without impairing the usefulness of the reservation for military purposes, we are of opinion that fractional section one on the west side of said reservation meant such a section to be found in the reservation on its west side.

The next objection is, that the grant does not purport to carry the fee; and, as it was only a use or equitable right, Congress had the power to grant the fee, as it did by the joint resolution of March 2, 1867, to plaintiff.

It is certainly true that the joint resolution of March 2, and the patent issued under it to plaintiff, cover geographically the land in controversy; and *Frisbie* v. *Whitney*, 9 Wall. 187, and the *Yosemite Valley Case*, 15 id. 77, are relied on to show that Congress could grant the land to other parties while the title of defendant was thus inchoate.

But there are two answers to this: 1st, The title of the defendant, whatever it was, became absolute on the issuing of the President's order, and had relation back to the date of the joint resolution under which it was made. It is, therefore, whatever its nature, an older title than that of plaintiff. It is not necessary here to decide whether it is a grant of the legal title, or only the grant of a use or easement; for, in either case, it vests the possession, of which the defendant cannot be deprived by an action of ejectment. 2d, The joint resolution under which plaintiff claims contains a proviso that nothing therein contained shall be construed to interfere with any grant of any part of said land heretofore made by the United States. As no other grant has been shown of any part of this land except the one under which the defendant claims, this proviso was no doubt intended to exempt it from plaintiff's grant; and, if there had been half a dozen other previous grants, it would have excepted them all as well as this from the operation of the joint resolution in which it is found.

In the first conclusion of law, finding the title under the joint resolution of 1866, and the order of the President, to be in defendant, we find no error.

The other proposition to which plaintiff excepted declares that plaintiff had title to all the land covered by the joint resolution of March 2, 1867, and by the patent, except that claimed by defendant under the joint resolution of July 26, 1866.

As this conclusion follows necessarily from what we have already said, it is unnecessary to notice it further.

*Judgment affirmed.*