SAVINGS & LOAN ASS'N et al. v. ALTURAS COUNTY et al.

(Circuit Court, D. Idaho.  September 1, 1893.)

No. 53.

CONSTITUTIONAL LAW — OBLIGATION OF CONTRACTS — EFFECT OF DIVISION OF COUNTY UPON ITS BONDS.

The county of A. issued bonds under an act of the legislature providing that 10 per cent. of such bonds should be paid in 10 years from the date of issue, and 10 per cent. annually thereafter until fully paid; that taxes should be levied to provide for the payment of principal and interest; and that the faith, credit, and all taxable property within the limits of the county, as constituted at the time of issuing the bonds, should be pledged for the payment thereof, but that segregated territory must be relieved of such taxation when the county acquiring such territory should pay to the county losing the same the corresponding proportion of the indebtedness of such county.  After the issue of the bonds the county of A. was divided, parts of its territory being erected into two new counties, part annexed to B. county, and part remaining as A. county.  The act making such division provided that the proportionate shares of the debt of A. county should be ascertained, in the manner therein provided, upon the basis of the assessed valuation of the lands contained in the several counties, as reconstructed, in the year prior to the division, and that the new counties and B. county should deliver to A. county their interest bearing warrants for their proportonal shares of such debt; 10 per cent. thereof payable in eight years, and

10 per cent. annually thereafter until fully paid. *Held*, that such act did not impair the obligation of the contract of A. county with the bondholders, and did not give the bondholders a right to proceed in equity against the separated counties to enforce contribution.

This was a suit by the Savings & Loan Association and others, holders of bonds of Alturas county, against the counties of Alturas, Elmore, Logan, and Bingham, to obtain contribution by said several counties, and payment of complainants' bonds. Defendants demur to the bill.

Texas Angel, for complainants.

S. B. Kingsbury and Richard Z. Johnson & Son, for Elmore and Logan counties.

F. E. Ensign, A. F. Montandon, and R. F. Butler, for Alturas county.

GILBERT, Circuit Judge. The complainants, who are several owners of bonds issued by Alturas county, bring this suit, in behalf of themselves and of all other holders of like bonds who may join therein, to recover upon interest coupons of said bonds, against the counties of Alturas, Logan, Elmore, and Bingham, upon the ground that, at the time the bonds were issued, Alturas county included the counties of Logan and Elmore and a part of Bingham, together with the present county of Alturas. The prayer of the bill is that, upon entry of judgment against said counties, the proper officers of all of said counties so segregated from the original county of Alturas pay to the county treasurer of the present Alturas county the amount found due from each, to be applied to said judgment, and that, if no tax is levied in any of said counties for that purpose, the proper officers thereof be commanded to levy and collect a tax therefor, in addition to other authorized taxes, and that the treasurers of said counties be commanded to pay the same to the treasurer of Alturas county, and that if the county of Alturas shall not have paid its portion of said interest, or levied a tax therefor, then that a like order be made for the levy and assessment and collection of a tax for the purpose, and that the treasurer of said county pay on said judgment all sums that shall come into his hands for such purpose. There is further prayer that the decree accord as nearly as practicable with the act of the legislature of Idaho of date January 25, 1887, in the mode and manner of ascertaining and determining the proportion of the interest and principal of said bonds which shall become due after the entry of said decree, and provide for an annual levy, assessment, and collection of taxes, as above prayed for, until the final payment and satisfaction of said bonds. The demurrers of the defendants raise the questions of the want of equity in the bill, and multifariousness.

The act under which the bonds were issued was enacted by the territorial legislature of Idaho on January 25, 1887, and is found in the Revised Statutes of Idaho (sections 3602 to 3607, both inclusive). Section 3602 provides:

"The board of county commissioners of any county may issue negotiable coupon bonds of their county for the purpose of paying, redeeming, funding

or refunding the principal and interest of any of the following indebtedness of their county, when same can be done, at a lower rate of interest and to the profit and benefit of the county. Said bonds shall be issued as near as practicable in denominations of one thousand dollars each, but bonds of the denominations of five hundred, and one hundred dollars may be issued when necessary. Said bonds must bear interest at the rate of not to exceed eight per cent. per annum, to be paid on the first day of January and the first day of July in each year, at the office of the county treasurer, or at such bank in the city of New York as may be designated by the board of county commissioners, at the option of the holder thereof; such bonds to be redeemed by the county in the following manner: Ten per cent. of the total amount issued, to be paid in ten years from the date of issue, and ten per cent. annually thereafter until all of said bonds are paid, making the last bonds redeemable twenty years from the date of issue. But said bonds or any part thereof, may, at the option of the county issuing the same, be redeemed at any time after five years from the date of their issue; provided, such time and option be stated upon the face of each bond, and each bond must be redeemed in the order it is numbered."

Section 3603 requires that each bond "recite that it is issued in conformity with the provisions of this chapter and this chapter must be printed upon the back of each bond."

"Sec. 3605. The board must cause to be levied annually upon all the taxable property of the county, in addition to other authorized taxes, a sufficient sum to pay the interest on all bonds disposed of in pursuance of the provisions of this chapter, and must at least one year before such bonds become due, and in time to, provide the means for the payment, cause to be levied a sufficient additional sum to pay said bonds as they become due, and all such taxes must be levied, assessed and collected as other county taxes, until the bonds so issued are fully paid including the interest thereof; the faith, credit, and all taxable property within the limits of the county as constituted at the time of such issue are, and must continue pledged, and the proper officer of the county must continue to assess and collect on all the taxable property within such limits, the necessary taxes to pay said bonds and interest thereon as the same becomes due; but the segregated territory must be relieved of such taxation when the county acquiring such territory pays to the county losing the same, the same proportion of the whole indebtedness of the county as the assessed value of the property in the segregated territory bears to the assessed value of the property in the whole county, as constituted before the division thereof. Should the tax for the payment of interest on any bonds issued under the provisions of this chapter, at any time not be levied or collected in time to meet such payment, the interest must be paid out of any moneys in the county general or current expense fund of the county, and the moneys so used for such payment of interest must be repaid to the fund from which so taken out of the first moneys collected from taxes.

"Sec. 3606. It shall be the duty of the county treasurer to apply the funds derived from the sale of the bonds to the payment of the indebtedness herein mentioned, and to no other purpose; and it shall be the duty of the county officials to levy, collect and apply the tax herein provided for the payment of interest and redemption of the principal of the bonds in the manner specified and for no other purpose; and any failure to comply with the conditions of this chapter by the proper officers or any neglect or refusal to levy and collect any such tax, as aforesaid, shall be deemed a misdemeanor, and any county official guilty of the same must, upon conviction, be fined in an amount equal to the sum that should have been levied, or for any misappropriation he shall be fined in an amount equal to the sum so misappropriated, and imprisoned in the county jail for a term of not less than three months nor more than twelve months."

The bill alleges that on July 30, 1886, Alturas county was indebted, mostly upon warrants, in the sum of $285,000, and that the warrants bore interest at 10 per cent. per annum, and that for the

purpose of funding said debt at a lower rate of interest the said bonds were issued in the years 1887 and 1888; that all of said bonds were sold prior to the 7th day of February, 1889, at which date the legislature of the territory of Idaho passed the act creating out of Alturas county the counties of Elmore and Logan, attaching a portion thereof to Bingham county, and continuing the remainder of the original county as Alturas county. The act provides as fol-. lows:

"Sec. 7. The indebtedness of Alturas county at the date of the passage and approval of this act shall be apportioned between the counties of Alturas, Elmore, Logan and Bingham counties, in the same proportion that the taxable property of the three counties have acquired from Alturas county, and that the four counties bear to each other as shown by the assessment roll of the year 1888 in Alturas county, and at their regular meeting in April, 1889, the boards of commissioners of the four counties mentioned shall, respectively, appoint each a competent accountant who shall meet at the town of Hailey and proceed to audit and ascertain the amount of indebtedness to be paid by each of the aforesaid counties to Alturas county, and they shall apportion all moneys in the treasury of said Alturas county, in the same proportion that they apportion the debt, but in apportioning the debt and bonds, they shall make no apportionment of the bonds issued for the erection of the court house or other public buildings in Alturas county, nor of any cash on hand to pay said bonds and interest, and they shall make out four certificates, one to be delivered to the board of commissioners for each county, showing the total indebtedness of Alturas county, its character, whether bonded or otherwise, and also the proportion to be paid by each county, and such accountants shall be allowed a reasonable sum for their services, to be paid by the county appointing each respectively.

"Sec. 8. Immediately after filing of the certificate of the proportion of the indebtedness named in the preceding section (7) the auditors of Elmore and Logan and Bingham counties, under the supervision of their respective boards of commissioners, must draw his warrant in sums of five hundred dollars, but one warrant may be drawn for a less amount in order to pay a fractional part of the debt, and not transferable, and bearing interest at the rate of seven per cent per annum, in favor of Alturas county, to the full amount of the indebtedness apportioned to their respective counties the interest on said warrants to be paid on first day of January and first day of July in each year at the office of the county treasurer of Alturas county, or at such bank in the city of New York as may be designated by the board of county commissioners of Alturas county, such warrants to be redeemed by each respective county in the following manner: Ten per cent. of the total amount issued to be paid in eight years from the date of the issue and ten per cent. annually thereafter, until all of said warrants are paid, making the last warrants redeemable eighteen years from the date of issue, and the money so received from the counties of Elmore, Logan and Bingham by Alturas county, shall be applied only to the payment of the present indebtedness of Alturas county, or the securities into which it has been funded." Laws 1888–89, p. 35.

It is the contention of complainants that the act creating the new counties is void, so far as it affects the bondholders, for the reason that it impairs the obligation of their contract; and thereupon they base their right to bring this suit against all of the counties embraced within the original territory of Alturas county.

The power of the legislature of a state or territory to change the territorial limits of its counties is plenary. Counties may be divided, and the legislature may apportion the public property and the indebtedness, or the division may be made without such apportionment. In the latter case the presumption arises that apportionment was not considered necessary. In such a case the old corpora-

tion owns all the property within its new limits, and is alone responsible for all the debts contracted by it before the act of separation was passed. Laramie Co. v. Albany Co., 92 U. S. 315. Neither is the paramount authority so vested in the state to change the organization of its municipal corporations restricted by contracts entered into by the municipality with its creditors or private persons. Amy v. Watertown, 130 U. S. 319, 9 Sup. Ct. 530; 1 Dill. Mun. Corp. § 170; Cooley, Const. Lim. 229, 230. The constitutional inhibition against the enactment of laws which shall impair the obligation of contracts, although, by its language, it is directed against the action of states only, is made applicable to the territories by statute. Rev. St. U. S. § 1891. The obligation of a contract has been defined to be "the law which binds the parties to perform their agreement." McCraken v. Hayward, 2 How. 612. The impairing act, which is prohibited, may be directed against the validity of the contract itself, or against the remedy by which performance is enforced. But it is not every change in the remedy that will amount to an impairment of the obligation of the contract. In Bronson v. Kinzie, 1 How. 311, the court said:

"Although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But, if that effect is produced, it is immaterial whether it is done by acting on the remedy, or directly on the contract itself. In either case it is prohibited by the constitution."

In Von Hoffman v. City of Quincy, 4 Wall. 535, Mr. Justice Swayne said, speaking for the court:

"It is competent for the states to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy which are to be deemed legitimate and those which, under the form of modifying the remedy, impair substantial right. Every case must be determined upon its own circumstances."

In Antoni v. Greenhow, 107 U. S. 774, 2 Sup. Ct. 91, the court said:

"It is well settled that changes in the forms of action and modes of proceedings do not amount to an impairment of the obligation of a contract, if an adequate and efficacious remedy is left."

The particulars wherein it is said that the statute dividing Alturas county impairs the obligation of the complainants' contract are as follows:

1. It is urged that the act took away from Alturas county the money it had on hand to pay the interest for the year 1889, and apportioned it among the newly-created counties. If it could be shown that this feature of the legislation prevented the payment of the interest for the year 1889, or in any way prejudiced the substantial rights of the bondholders, the objection would be well taken. But such is not the case. The interest for that year has been paid, together with the interest due January, 1890, and a portion of the interest which fell due July, 1890. But, even if the interest of 1889 had not been paid, it could not be said that the division of

the moneys in the possession of Alturas county when the act took effect worked any hardship to the bondholders, or affected injuriously their contract. The act of segregation, while it apportioned among all the four counties the funds then in the treasury of Alturas county, made full provision for the repayment of an equivalent amount to that county by the counties separated therefrom. The resources of Alturas county for the payment of its liability were not thereby lessened or impaired.

2. It is claimed that no provision is made in the act of segregation for the payment by the segregated counties of their proportion of the interest from the date of the act to the date of the issuance of the warrants. No support for this contention can be found in the language of the act, or any legitimate construction of the same. The act requires the immediate determination of the proportionate liability of each of the segregated portions of the county, and the immediate execution of the warrants, drawing interest at 7 per cent. per annum, the interest payable in January and July of each year. The warrants are to be for the "full amount" of the respective portions of the indebtedness. Neither of the counties could escape any measure of its liability by delaying the execution of the warrant. The warrants, whenever drawn, must be in such amounts as shall discharge the debts severally imposed upon the counties at the time of the segregation.

3. It is objected that the act provides, as a basis of apportionment of the debt between the segregated portions of the original county of Alturas, the assessed valuation of the property of that county as it stood in the year 1888, while the funding act provides for an annual assessment upon all the taxable property of the county to pay the annual interest on the bonds, and provides for a further assessment at least one year before the maturity of the bonds, to pay the principal thereof, and that thereby the faith, credit, and all taxable property within the limits of the county, as then constituted, were, and must continue, pledged to the complainants until the payment of the bonds, principal and interest. The question raised by this objection is one that concerns the equitable adjustment of the bonded indebtedness between Alturas county and the counties of Elmore, Logan, and Bingham. It may be, as urged by the complainants, that the apportionment of the debt, as fixed by the act of segregation, has been rendered unfair and unjust to the present county of Alturas by the unequal changes which have ensued in the values of the assessable property which was originally pledged to the payment thereof. But until it can be shown by proper averments that the security of the bondholders is thereby impaired, so as to interfere with or prevent the recovery of the debt and interest due, or to become due thereon, or some portion thereof, the court cannot, upon that ground, interfere, or declare nugatory the action of the legislature. The legislature had the power, at the time of dividing Alturas county, to impose upon the new county of Alturas the obligation to discharge all of the indebtedness of the old corporation. Instead of doing so, it saw fit to make an apportionment of the indebtedness upon all of the newly-created counties upon the basis of

the assessable property of the original county of Alturas, as the values then stood. Its action in so doing cannot be questioned either by the present county of Alturas or by the bondholders. If there is hardship to Alturas county in the apportionment, the only recourse of that county is to the legislature. Laramie Co. v. Albany Co., supra.

4. It is further specified that the statute dividing Alturas county makes no provision for levying or collecting a special tax in the other counties for the payment of their proportionate part of the indebtedness. It was not necessary that express provision should have been made for such taxation. The duty and authority to draw warrants for the payment of their respective portions of the indebtedness carried to the other counties, by implication, the duty and authority to provide for the payment of the warrants when due. Such provision could be made only by taxation. In Association v. Topeka, 20 Wall. 660, the court said:

"It is therefore to be inferred that, when the legislature of a state authorizes a county or city to contract a debt by bond, it intends to authorize it to levy such taxes as are necessary to pay the debt, unless there is in the act itself, or in some general statute, a limitation upon the power of taxation which repels such inference."

The doctrine of that case is followed in U. S. v. New Orleans, 98 U. S. 393; Ralls Co. Ct. v. U. S., 105 U. S., 735; Parkersburgh v. Brown, 106 U. S. 501, 1 Sup. Ct. 442; and Quincy v. Jackson, 113 U. S. 337, 5 Sup. Ct. 544.

5. It is said that the obligation of the complainants' contract is impaired by restrictions placed upon their remedy, rendering the same more difficult, if not futile, and practically inoperative. The argument is that, if any of the four counties should fail to appoint accountants to apportion the debt, the bondholders would be compelled to apply for mandamus to compel such apportionment, and that, if the accountants should fail to meet, it would be necessary to again resort to mandamus to compel their meeting, and that a further mandate might be necessary to compel their agreement upon an adjustment, and the question might then arise whether the action of the accountants would be subject to control by mandamus, and that, after the apportionment, mandamus might be required to compel the issuance of warrants, none of which acts were necessary under the funding act in force when the contract was made. I deem it a sufficient answer to this argument to say that the necessity of resorting to any of these extraordinary remedies is not made apparent from any of the facts set up in the bill. The right of action of the bondholders is now, as before the division of Alturas county, against that county alone. No reason is suggested in the bill why a judgment against Alturas county may not be enforced. The bill, it is true, contains an allegation, upon information and belief, that Alturas county is insolvent, and unable to pay said interest coupons unless the other counties are compelled to pay each its just proportion thereof; and there is a further allegation, upon information and belief, that Elmore and Bingham counties have made no such payment since the segregation. Conceding that these averments are

true, it does not follow that the complainants have the right to resort to equity. These facts, as alleged, do not change the status of the bondholders with reference to Alturas county, and do not suffice to change their right of action against that county into a suit in equity against the defendants. With the action of the other counties, their neglect to apportion the debt, their failure to issue warrants or to pay the same, the bondholders have no concern. Alturas county is required to meet the payments due upon the bonds. Her resources for that purpose are pointed out. A portion of the money she is to raise by taxation; the remainder she is to collect from the other counties. If the other counties neglect or refuse to issue the warrants, or to pay the same when due, Alturas county has her remedy against them. The bill alleges that for the interest due on the bonds in January, 1890, action was brought, and judgment was rendered, against Alturas county, and that the judgment has been satisfied. No sufficient reason is suggested why the same remedy may not now be pursued to recover the money sought to be obtained by this suit.

It is claimed that precedents are found for this proceeding in the cases of Morgan v. Beloit, 7 Wall. 613; Mt. Pleasant v. Beckwith, 100 U. S. 514; and Brewis v. Duluth, 9 Fed. 747. On examination of those cases, however, it will be seen that in each there existed a ground of equity jurisdiction entirely distinct from any presented in this case. In Morgan v. Beloit, the legislature had created a city, carving it out of a region which was previously a town only, and had enacted that all bonds previously issued should be paid, when due, by the city and the town, in the same proportion as if said town and city were not dissolved. A ground of equity jurisdiction was held to exist in the fact that both the town and city were necessary parties to a computation and adjustment of the amount to be paid by each. In Mt. Pleasant v. Beckwith, a municipal corporation had been legislated out of existence, and its territory had been annexed to two other corporations. No provision had been made in regard to the payment of the indebtedness of the old corporation. It was held that the remedy of the creditors of the extinguished corporation was in equity against the corporation succeeding to its property and powers. In Brewis v. Duluth, it was alleged in the bill of complaint that the village of Duluth had been created, by act of the legislature, out of a part of the city of Duluth, and that, in the village thus created, all of the business part of the city, its houses, the harbor, railroad depot, and tracks, nearly all the dwelling houses, 19-20 of the taxable property, and all the population, excepting about 100 inhabitants, were included, and no provision was made for the payment of the debts of the city by the village, unless creditors would accede to certain terms imposed by the legislature, whereby they would necessarily be delayed in the collection of their debts. The court held that the statute interfered with the rights of creditors, because "the corporation which had created the debt was shorn of its population and taxable property to such an extent that there was no reasonable expectation of its meeting its recent indebtedness," and overruled a demurrer to the bill which was brought

against both the city and the village to enforce payment of the debts. Upon the final hearing in that cause, however, upon proof which convinced the court that the city of Duluth was still able to meet its liabilities, notwithstanding the division of its territory and assets, the bill was dismissed. Brewis v. Duluth, 13 Fed. 334. So far from sustaining the complainants' contention, the inference to be drawn from these decisions is that in any case where an existing municipal corporation is, by statute, divided, and the existing indebtedness is, either by implication or by express enactment, imposed upon the old corporation, the creditor has no recourse to the segregated territory, unless it appear that the old corporation is, by the statute, shorn of its ability to meet the payment.

It becomes unnecessary to consider the question of multifariousness, since the demurrer must be sustained for want of equity in the bill.