THE INHABITANTS OF THE TOWNSHIP OF BLOOMFIELD

*v.*

THE MAYOR AND COUNCIL OF THE BOROUGH OF GLEN RIDGE et al.

1. Where a portion of the territory of a municipal corporation is thrown into a new municipality, the right to use and to regulate the use of sewers and hydrants within such territory passes to the new government.

2. Boroughs created from townships, under the act of 1878, are distinct from the townships in respect to their control over sewers and hydrants.

Bloomfield v. Glen Ridge.

On bill and demurrer.

The bill states that the complainant is a township authorized to construct sewers and to contract with other municipalities for the right to connect its sewers with theirs; that it made a contract with the city of Orange for the building of a main outlet sewer, through which, by said contract, it is entitled to discharge sewage and to prohibit any other municipality, except the city of Orange and the township of Montclair, from doing so.

Complainant paid $55,034 for its share of the expense, and issued bonds for the same, which are still outstanding; that the complainant constructed lateral sewers through its streets and paid for the same $30,863.97; that after the construction of these sewers the borough of Glen Ridge was organized, including within its limits a number of streets through which such lateral sewers were constructed; that all the sewers in the borough of Glen Ridge discharged through lateral sewers of the complainant into the main outlet sewer; that all the sewers were constructed as part of an entire system, and required to be under one management; that the township of Bloomfield adopted an ordinance for the management of its entire system; that since the formation of the borough of Glen Ridge it has adopted an ordinance for the control of said sewers within its borders, inconsistent with complainant's ordinance; that before the formation of the borough of Glen Ridge the complainant had made a contract with the township of Montclair, giving Montclair leave to construct a sewer through Bloomfield to connect with the main outlet sewer; that part of the Montclair sewer ran through the district now within the borough of Glen Ridge; that by the contract with Montclair complainant acquired the right to use the sewer jointly with Montclair, for the consideration of the sum of $4,000 and the payment of its proportionate share of the cost of maintenance, operating and repair.

The bill charges that in one instance the borough prevented a plumber from making a connection, under a permit issued by the township of Bloomfield; that, on the other hand, the borough has itself issued a number of permits, and has made a number of connections with the sewers within its limits.

The prayer is for an injunction, restraining the defendants from interfering with the complainant's sewers within the limits of the borough and from exercising any management over such sewers, or authorizing any connection with said sewers, or authorizing any discharge in or through said sewers; also, for an injunction restraining the defendants from interfering with the complainant or its agents in making connections with the sewers within the limits of the borough of Glen Ridge.

*Mr. George S. Hilton,* for the complainant.

*Mr. Joseph G. Gallagher* and *Mr. Joseph Coult,* for the defendants.

REED, V. C.

It appears that the township of Bloomfield, together with the city of Orange and the township of Montclair, built an outlet sewer, each to pay its proportion of the expenses; that Bloomfield has raised its proportion by issuing bonds, which are still outstanding. It appears that the township of Bloomfield also constructed lateral sewers through its streets and paid for them $30,863.97.

It appears that since the construction of these sewers, a new borough has been organized, called the borough of Glen Ridge. It also appears that a portion of the territory of the township of Bloomfield has been included within the limits of the new borough, and that a number of streets in which these lateral sewers were placed, are now within the territorial limits of the borough. The question which the bill attempts to raise is, whether the right to control the use of such sewers as now lie within the borough, has passed to the borough government, or whether it still resides in the township authority.

The contention on the part of the township is, that it paid for these laterals, and is liable to pay for its part of the cost of the main sewer, by means of which the laterals became usable; that the title in the laterals still resides in it, and that it has the right to control and use its own property.

It is stated in the bill, for the purpose of adding to the force of this contention, that these sewers were built to be operated as a single system, and that it has, under a contract with the township of Montclair, become liable to pay a proportionate share of the expense of building and maintaining the sewer through the territory of Glen Ridge. I do not perceive that these facts can influence the decision of the question in hand. The sewers must be regarded as any other corporate property for which the municipality has paid, or for which it is liable to pay, either by reason of its outstanding bonds or by the terms of a contract still outstanding. It is corporate property, and the query is, to whom does the right to use and control it belong after it is thrown into the new municipality? Many of the questions which spring out of the divisions of the territory of a municipality in respect to the property of the old municipality are entirely settled. For instance, it is settled that the legislature, by virtue of its control over municipal corporations, has the ability to fix the rights of the new and the old corporations in the property, and to adjust the burden of the corporate debts. *Dill. Mun. Corp.* § *127.*

It is also settled that where no legislative adjustment is provided for, then the old corporation remains liable for all the debts. *Dill. Mun. Corp.* § *128.* It is also settled that all transitory property, such as bonds, money in sinking funds and property of that class, and all real estate that lies within the limits of the old corporation, remains the property of the old municipality.

But in respect to property used for public purposes, such as engine-houses, school-houses, public markets, which are located upon lands which fall within the limits of the new corporation, there exists some contrariety of judicial sentiment. There are cases which hold that the old corporation is not stripped of its title to such property. In *Whitier* v. *Sanborn, 38 Me. 32,* it was held that the alterations of the lines of the school district, whereby a school-house was left in another district, would not change the right of property therein. It was also said, *obiter,* in *School District* v. *Richardson, 23 Pick. 62,* that the alteration

of the lines of a school district would not change the property rights of the old district in a school-house thrown outside of its limits.

In *Board of Health of Buena Vista Township* v. *City of East Saginaw, 45 Mich. 257*, land had been conveyed to the board of health in trust for cemetery purposes for the township of Buena Vista. Afterwards, the city of East Saginaw was incorporated, including the cemetery. The court held that there was no common-law rule by which property can be transferred from one corporation to another without a grant, and as there was no statute, the property was unaffected by the change of corporate lines.

In *Winona* v. *School District No. 82, 40 Minn. 13*, a schoolhouse, by the alteration of the city lines, had been thrown within the city limits; it was held that the old district still retained title to the school-house. The opinion of this case reviews, exhaustively, the cases which have dealt with the subject. These cases, as is perceived, involve the question of title to school-houses, cemeteries and ministers' houses, which, by reason of the manner in which, and the purpose for which, they are usable, may possibly be distinguishable from other kinds of municipal property lying within the new territory. But the reasoning upon which some of the cases go, viz., that there is no other way by which the old corporation can be deprived of its title except through its own grant or by express legislation, seems to include, within the rule announced, property of all kinds.

Opposed to the theory of these cases, there are *dicta* of great weight in favor of an opposite rule as the better one, viz., that property fixed to the land within the new corporation becomes the property of that municipality. The cases in which this doctrine has been asserted or approved are the following : *Bridge Company* v. *East Hartford, 16 Conn. 171 ; School District* v. *Tapley, 1 Allen 48 ; Laramie County* v. *Albany County, 92 U. S. 315; Mount Pleasant* v. *Beckwith, 100 U. S. 525; Board* v. *Board, 30 W. Va. 424; North Hemstead* v. *Hemstead, 2 Wend. 109.*

In my judgment, the cases which hold that the right to control this kind of property remains still in the old corporation, press unduly the notion that there must be an express grant or express legislation to pass control over such property to the new municipality. The title held by a municipality is of a peculiar kind. It is held by the corporation as a trustee for the public. Municipal corporations are organized for the purpose of creating agencies for the purchase, construction and operation of such appliances as are essential to the health, safety and convenience of the people and their property. The appliances so created, whether engine-house, market-house, school-house, lamps, water-pipes, hydrants, sewers, are so distributed as to be of the most efficient service to the public; they are brought into existence to be so used. Now, when the territorial limits of a corporation are diminished by the excision of a part of its territory, the power of control of the public agent over those appliances is restricted to the newly-defined limits of the corporation. This is admittedly so, unless the legislature does what is unusual, confers a power upon its agents to act extra-territorially. It is entirely settled that the powers of city officers are extended or restricted in conformity with the change of the boundaries of a municipality. *Ehrgott* v. *Mayor of New York, 96 N. Y. 264; St. Louis Gaslight Co.* v. *St. Louis, 46 Mo. 121; Town of Toledo* v. *Edens, 59 Iowa 352; Coldwater* v. *Tucker, 36 Mich. 474; Strauss* v. *Pontiac, 40 Ill. 301.*

It follows, therefore, that the power to use the property lying outside of the boundaries of the old corporation for municipal purposes is extinct. It is admitted in the case of *Winona* v. *School District No. 82, supra,* that the old corporation held only the bare title to the school-house which by change of line was thrown into the city. The old corporation could only sell it as it stood. It could not use it for the purpose to which it had been built and devoted.

Now, as a matter of public policy, it is important that this kind of property shall be continuously employed in subserving the public purpose for which it was created. The only agency existing which can so use it, is that which has sprung into exist-

Bloomfield *v.* Glen Ridge.

ence by the organization or creation of the new corporation. Now, it seems to me quite as reasonable to say that the legislature, by conferring the power to create the new corporation, implicitly conferred a power to employ all public property found within its limits, as it is to say that it meant that this property should lie idle. And if it be said that the new corporation may purchase it, it is answered, who is to fix the price? and, while negotiations are pending, who is to control and use this public property?

Now, the legislature undoubtedly, if its attention was called to this matter, would fix upon some method, judicial or otherwise, by which the distribution of municipal property and municipal debts could be adjusted in all instances like the one under consideration.

But, in the absence of such legislation, I think that the doctrine which I have announced is the most conducive to the public interest. Nor is it, as a rule, more inequitable than the other. When the property which falls within the new corporation is still to be paid for, it is, of course, inequitable that the whole burden of payment should fall upon the old corporation. But it is quite likely that such property, as I understand is the case in respect to the lateral sewers, has been already paid for. In such case, the people in the new government have paid their proportion of the expenses, and where the property is of a kind to be distributed through the territorial limits of the old corporation, like lamp-posts, hydrants, water-pipes and sewers, it is quite probable that the new corporation gets no more by the alteration of municipal lines than its inhabitants have paid for.

Upon the assumption, therefore, that the borough and the township are distinct corporations, I am of the opinion that the complainants have exhibited no ground for the relief they claim.

The complainants, however, insist that the parties to this suit do not stand on the footing of distinct municipalities.

The contention is that the borough, organized within the township limits, does not exclude the control of the township over all the objects of local government; that, like the city of

Plainfield and the village of Flemington and certain commissions, only a portion of the local government is confided to it, while the residue remains in the larger municipality.

Now, it is undoubtedly true that the boroughs, as originally formed under the act of 1878, did not possess local powers coextensive with those of townships. Many of the objects of local government still remained in the township; but as, by supplements to the acts of 1878, the powers of the borough government were enlarged from time to time, so, *pari passu*, those of the townships were diminished, and the township governments were necessarily excluded from any control over the subjects which were thus confided to the borough government.

This consequence necessarily results from the well-settled doctrine, that there cannot be two municipal corporations for the same purposes, with coextensive powers of government, at the same time, over the same territory. *Grant. Corp. 18; Dill. Mun. Corp. (3d ed.) § 184; Paterson* v. *Society, 4 Zab. 385; King* v. *Passmore, 3 T. R. 343.*

Now, among the subjects which have been confided to the borough government under supplements to the general act, is that of control over sewers. *P. L. of 1893 pp. 271, 460; P. L. of 1892 pp. 96, 397.*

The effect of investing boroughs with this control is to exclude the control of any other municipal corporation within the limits of the borough.

It is, therefore, apparent that the discussion with respect to the constitutionality of the act of 1895, which act purported to sever the territory of the boroughs organized under the act of 1878 from the territory of the township, is unimportant, for, unless all the supplements which have conferred powers upon the boroughs are unconstitutional, the act conferring control over sewers must be regarded as valid, and it, without further legislation, excludes the township from exercising any control, in respect to this branch of municipal government, within the limits of the borough.

I therefore regard the two municipalities, in respect to the matter now under consideration, as entirely distinct. This view

strips the complainants, as already remarked, of the right to relief under this bill.

But there is another view, not discussed on the argument, which seems to me to defeat the complainant's present suit. The borough of Glen Ridge has indicated its right to control and regulate these sewers, by an ordinance passed by its council. It has further indicated it, by permits granted by the appropriate officer, to its citizens, to connect with the sewers. This appears in the bill. The legality of these ordinances and these permits is reviewable in a court of law by the writ of *certiorari;* and so far as appears in this case, such remedy is entirely adequate. No case of irreparable injury to property is presented; nor is there presented a case where a municipal corporation is illegally attempting, to exercise its corporate power, to strip a citizen of his property. In the absence of either of these features, even conceding the right of the township to regulate it, there is no such interference with its property as cannot be adequately remedied by a resort to a writ of *certiorari.* For this reason also, I think, the demurrer is properly interposed.