## AMY *v.* WATERTOWN. (No. 1.)

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WISCONSIN.

No. 196. Argued March 12, 13, 1889. — Decided April 8, 1889.

Between the time when the Process Act of May 8, 1792, 1 Stat. 275, went into effect, and the passage of the act of June 1, 1872, 17 Stat. 196, (Rev. Stat. § 914,) it was always in the power of the Federal courts, by general

rules, to adapt their practice to the exigencies and conditions of the times; but since the passage of the latter act the practice, pleadings and forms and modes of proceeding must conform to the state law and to the practice of the state courts, except when Congress has legislated upon a particular subject, and prescribed a rule.

When a state statute prescribes a particular method of serving mesne process, that method must be followed; and this rule is especially exacting in reference to corporations.

In the construction of a state statute in a matter purely domestic this court is always strongly disposed to give great weight to the decisions of the highest tribunal of the State.

The provisions of the Revised Statutes of Wisconsin which require service of process generally on cities to be " by delivering a copy thereof to the mayor and city clerk," and the provision of the charter of the city of Watertown which requires such service to be made by leaving a copy with the mayor, have been held by the highest court of the State to be peremptory and to exclude all other officers, and it has also held that the fact that there is a vacancy in the office of mayor does not authorize service to be made upon some other substituted officer: and this court concurs with that court in this construction.

*Broughton* v. *Pensacola*, 93 U. S. 266, and *Mobile* v. *Watson*, 116 U. S. 289, differ essentially from this case.

A motion to set aside a judgment if made, and service thereof made at the term at which the judgment is rendered, may be heard and decided at the next term of the court if properly continued by order of court.

THIS was an action in contract to recover on bonds issued by the municipality of Watertown, in Wisconsin. Judgment for the defendant. The plaintiffs sued out this writ of error. The case is stated in the opinion.

*Mr. George P. Miller* for plaintiffs in error.

*Mr. George W. Bird* and *Mr. Daniel Hall* for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The principal question in this case is, whether the defendant, the city of Watertown, was served with process in the suit so as to give the court below jurisdiction over it. In order to understand the bearing of the facts of the case, it will be necessary to give a brief abstract of the laws of Wisconsin which relate to it, and these are mostly to be found in the

charter of the city of Watertown and the acts supplementary thereto. The state laws are referred to because they govern the practice of the Federal courts in the matter under consideration. By the 5th section of the act of June 1st, 1872, Rev. Stat. § 914, it is declared that "the practice, pleadings and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the Circuit and District Courts, shall conform, as near as may be, to the practice, pleadings and forms and modes of proceeding existing at the time in like causes in the courts of record of the State within which such Circuit or District Courts are held." Were it not for this statute, the Circuit Courts themselves could prescribe, by general rule, the mode of serving process on corporations as well as on other persons.

By the temporary Process Act of September 29th, 1789, 1 Stat. 93, if not otherwise provided, the forms of writs and executions, (except their style,) and modes of process in the Circuit and District Courts, in suits at common law, were directed to be the same as in the Supreme Courts of the States respectively. By the permanent Process Act of May 8, 1792, 1 Stat. 275, it was enacted that the forms of writs, executions and other process, and the forms and modes of proceeding, in suits at common law, should be the same as directed by the act of 1789, subject to such alterations and additions as the said courts should deem expedient, or to such regulations as the Supreme Court of the United States should think proper by rule to prescribe to any Circuit or District Court. So that the practice in United States courts, in the old States, was made to conform to the state practice, as it was in 1789, subject to alteration by rule of court. In 1828 a law was passed adopting for the Federal courts in the new States, admitted since 1789, the forms of process, and forms and modes of proceeding of the highest courts of those States respectively, as then existing, subject to alteration by the courts themselves or the Supreme Court of the United States. 4 Stat. 278. By the act of August 1, 1842, the provisions of the act of 1828 were extended to the States admitted in the intermediate time.

This review of the statutes shows that after 1792 it was

always in the power of the courts, by general rules, to adapt their practice to the exigencies and conditions of the times.

But the statute of 1872 is peremptory, and whatever belongs to the three categories of practice, pleading and forms and modes of proceeding, must conform to the state law and the practice of the state courts, except where Congress itself has legislated upon a particular subject and prescribed a rule. Then, of course, the act of Congress is to be followed in preference to the laws of the State. With regard to the mode of serving mesne process upon corporations and other persons, Congress has not laid down any rule; and hence the state law and practice must be followed. There can be no doubt, we think, that the mode of service of process is within the categories named in the act. It is part of the practice and mode of proceeding in a suit.

Assuming, therefore, that the question is one to be governed by the local or state law, we proceed to give an abstract of the charter of Watertown, and such other laws of Wisconsin as bear upon the subject. We find this mostly made to our hand in the brief of the plaintiffs in error, taken from the consolidated charter of 1865, and it is as follows:

Chapter 1, § 3. "The said city shall be divided into seven wards."

Section 4. "The corporate authority of said city shall be vested in one principal officer, styled the mayor, in one board of aldermen, consisting of two members from each ward, who, with the mayor, shall be denominated the common council. . . ."

Section 5. "The annual election for ward and city officers shall be held on the first Tuesday of April of each year. . . ."

Section 6. ". . . All elective officers, except aldermen, shall, unless otherwise provided, hold their respective offices for one year and until their successors are elected and qualified. . . ."

Section 7. "In the event of a vacancy in the office of mayor, alderman, . . . the common council shall order a new election. . . ."

Chapter 2, § 2. "The mayor, when present, shall preside over

the meetings of the common council, and shall take care that the laws of the State and the ordinances of the city within the corporation are duly enforced and observed, and that all officers of the city discharge their respective duties. He shall appoint the police force. . . . He shall have a vote in case of a tie only. . . ."

Section 3. "At the first meeting of the common council in each year, or as soon thereafter as may be, they shall proceed to elect, by ballot, one of their number president; and in the absence of the mayor the said president shall preside over the meeting of the common council, and during the absence of the mayor from the city, or his inability from any cause to discharge the duties of his office, the president shall execute all the powers and discharge all the duties of mayor. In case the mayor and president shall be absent from any meeting of the common council, they shall proceed to elect a temporary presiding officer, who, for the time being, shall discharge the duties of mayor. The president, or temporary presiding officer, while presiding over the council, or performing the duties of mayor, shall be styled 'acting mayor,' and acts performed by them shall have the same force and validity as if performed by the mayor."

Chapter 3, § 3. "The common council shall have the management and control of the finances and of all the property of the city, and shall likewise, in addition to the powers herein vested in them, have full power to make, enact, ordain, establish, publish, enforce, alter, modify, amend and repeal all such ordinances, rules and by-laws for the government and good order of the city, for the suppression of vice and immorality, for the prevention of crime, and for the benefit of trade, commerce and health. . . ."

The common council is then given in twenty-six sections, the usual powers which are commonly vested in the common councils of cities.

Chapter 5, § 1. ". . . All funds in the treasury . . . shall be under the control of the common council, and shall be drawn out upon the order of mayor and clerk, duly authorized by a vote of the common council. . . ."

Chapter 7, § 2. "The common council shall by resolution levy such sum or sums of money as may be sufficient for the several purposes for which taxes are herein authorized to be levied. . . ."

Chapter 9, § 8. "When any suit or action shall be commenced against said city the service thereof may be made by leaving a copy of the process with the mayor."

Chapter 61 of the Private and Local laws of Wisconsin for 1867 provides:

Section 1. "Section seven of the first chapter of said act (an act to incorporate the city of Watertown, and the several acts amendatory thereof, chapter 233 of the General Laws of 1865) is hereby amended so that it shall read as follows:

"In the event of a vacancy in the office of mayor . . . by death, removal, or other disability, the common council shall order a new election. . . . In case of a vacancy in the office of alderman the mayor may order a new election. . . ."

". . . Any city officer who shall resign his office shall file with the city clerk his resignation in writing, directed to the mayor, and such resignation shall take effect from the time of filing the same."

Chapter 204 of the Private and Local laws of Wisconsin for 1871 provides:

Section 1. "The senior aldermen of each ward of the city of Watertown shall constitute a board of street commissioners, who are hereby authorized, subject to the regulation and control of the common council, to audit and allow accounts against the city, . . . and when allowed, orders on the treasury shall issue therefor, and in case of vacancy in the office of mayor, and there is no president of the common council to act, said orders may be signed by the chairman of said board and the city clerk. The city clerk shall be the clerk of said board, and shall keep record of its proceedings. The mayor may preside at the meetings of said board, and they may elect a chairman who shall preside in his absence. . . . Said board shall have all the powers conferred upon the common council by the city charter in relation to streets

and bridges and sidewalks. . . . Said board are also authorized to canvass the returns of all votes polled at the election for city or ward officers, and determine and declare the result of such election."

Section 2. "In case of vacancy in the office of alderman in any of the wards, the aldermen remaining in office shall have and exercise all the powers of street commissioners of the ward. The resignation of the mayor shall be in writing, directed to the common council or city clerk, and filed with the city clerk, and shall take effect at the time of filing the same."

Ch. 2, Priv. & Loc. 1872, amended said chapter as follows:

Section 1. "The board of street commissioners of the city of Watertown shall have all the powers conferred by law upon the common council of said city, in relation to public schools, the police, fire department, nuisances, the regulation of slaughter-houses, and the public health, subject to the regulation and control of said common council. Provided that said board of street commissioners shall have no power of levying taxes for any purpose whatever."

Chapter 46, of Laws of Wisconsin for 1879, provides:

Section 2. "The board of street commissioners of said city, and the chairman of said board, shall have concurrent power with the mayor and common council of said city, in the appointment of inspectors and clerks of election, and shall have all other powers conferred, by law, upon said mayor and common council, subject to the control of said common council, except the power of levying taxes, which they shall not have in any case whatever."

Section 3. "The common council of said city may, in its discretion, in any year, reduce the amount of city taxes levied under section three of chapter two hundred and four of the private and local laws of 1871, and cause a less sum than is levied under said section to be placed in the tax list for collection, for that year, for the several funds of the city."

By the Revised Statutes of Wisconsin of 1878, § 2637, the manner prescribed by law for service of process on cities generally is, "by delivering a copy thereof to the mayor and city

clerk." As there was a special law with regard to the city of Watertown contained in its charter, requiring a copy to be left with the mayor, the general law probably did not supersede it. But as the mayor must be served with process according to both laws, it can make no difference in the disposition of the case which is assumed to prevail.

We have given these quotations more fully because the plaintiffs in error seemed to regard them as having some importance in the consideration of the case.

The facts as disclosed by the record are briefly as follows:

On the 3d of March, 1873, the plaintiffs, by their attorneys, sued out a summons against the defendant to answer a complaint for a certain money demand within twenty days after service of the summons. On the 6th of March, 1873, the marshal returned that he had that day served the summons on the city by delivering a copy of it to the city clerk and city treasurer. The defendant appeared specially by its attorney, and moved to set aside the said service on two grounds:

1st. That the summons was not served on the mayor of the city, as required by its charter.

2d. That it was not served on three residents and freeholders of the city, as provided by the rules of the court.

Thereupon the plaintiff filed an affidavit of the marshal, stating that at the time of service of the summons there was no mayor or acting mayor of said city, and had been none since the 14th day of February, 1873 (the writ being dated and issued the third day of March, 1873). The defendant filed a counter affidavit of the city clerk, stating that he had examined the records of the city and the proceedings of the board of street commissioners for the months of January, February, March and April, 1873, and from these it appeared that F. Kusel, mayor of the city, resigned the office of mayor on the 30th of January; that from thence to the 24th of February, Street Commissioner Maak was the chairman of the board of street commissioners and acting mayor of the city; that from the 24th of February to the 17th of March, Street Commissioner Prentice was temporary chairman of said board, and acting mayor; and that on the 6th and 8th of March, 1873, said Prentice was acting mayor.

Upon these affidavits the court on the 8th of April, 1873, being of opinion that the summons had not been served upon the defendant in the manner prescribed by law, so as to give the court jurisdiction of the defendant, or so as to entertain any motion or proceedings in the case as against the defendant or on its behalf, unless it appeared, made an order authorizing the clerk to return the summons to the marshal, to be served on the defendant according to law, or for such further action as the defendant (meaning the plaintiffs) might direct conformably to law.

It does not appear from the record that anything further was done for nearly ten years. On the 23d of December, 1882, the marshal made return of service of said summons as follows:

"Served on the within-named The City of Watertown by delivering to Wm. H. Rohr, last mayor of said city; Henry Bieber, city clerk; Chas. H. Gardner, city attorney, and Thomas Baxter, last presiding officer (or president or ch'm'n) of the board of street commissioners of said city of Watertown, each personally a copy of the within summons and by showing each of them this original summons this 23d day of December, 1882, the office of mayor of said city being vacant and there being no president of the common council or presiding officer thereof in office."

Thereupon, on June 19, 1883, plaintiffs filed their complaint setting out four bonds of $1000 each, dated June 1, 1856, issued by the defendant to aid in the construction of the Watertown and Madison Railroad, and payable January 1, 1877, with eight per cent interest, payable semi-annually, upon presentation and surrender of the interest warrants or coupons attached to the bond; and setting forth, also, eighty-four of such coupons of $40 each, and demanding judgment for the amount of said coupons, $3360, together with interest at seven per cent on the amount of each coupon from the time it became due.

On the same day, June 19, 1883, plaintiffs filed an affidavit of no answer or appearance, caused the amount due on the eighty-four coupons to be computed by the clerk, and there-

upon the court rendered judgment against the defendant by default for the amount so found due, to wit, $7762.44 damages and $49.70 costs.

On the 27th day of July, 1883, the defendant appeared specially for the purpose, and served notice of motion to set aside the judgment and service on the ground that there had been no service of summons and the court had no jurisdiction of defendant. The motion was based upon the affidavits of Henry Bieber, Thomas Baxter, and William H. Rohr, showing the following facts:

1. That William H. Rohr, designated in the marshal's return as the "last mayor of said city," was elected mayor at the annual municipal election, April 4, 1882, duly qualified and entered upon the duties of the office, and thereafter, on April 10, 1882, duly resigned the office in writing directed to the common council and filed his resignation with the city clerk, and had not since been mayor or acting mayor or president of the common council.

2. That Charles H. Gardner, named in the return, was never attorney for defendant in this action, or authorized to appear or to accept, admit or receive service for it therein.

3. That Thomas Baxter designated in the return as "last presiding officer (or president or ch'm'n) of the board of street commissioners of said city," was the senior alderman of the 3d ward, and as such a member of the board of street commissioners of the city, from April 10, 1882, to April 7, 1883.

That but one meeting of said board was held in November, 1882, and that was on November 11, 1882; that no mayor and no chairman elected by the board to preside at its meeting in the mayor's absence, being present, William F. Voss, senior alderman of the 6th ward, and a member of the board, was chosen by a *viva voce* vote of the members present chairman *pro tem.*, to preside at that particular meeting, which, after the transaction of its business, adjourned on said 11th day of November, 1882.

That there were only three meetings of said board in December, 1882, to wit, regular meetings December 4th and 18th, and a special meeting December 27th; that there being

no mayor nor chairman elected by the board to preside at its meetings in the mayor's absence, present at either of said meetings of December 4th or 27th, said Baxter was chosen at each said meeting by a *viva voce* vote of the members present chairman *pro tem.* to preside at that particular meeting, and that said meetings adjourned *sine die* respectively on December 4th and 27th, after the transaction of their business, and that said Baxter ceased to be such temporary chairman after the adjournment of said meetings. That the meeting of December 18th, being without a quorum, adjourned without the transaction of any business. And that no meeting of said board was held after December 27th until January 15th, 1883.

That besides said two meetings in December, said Baxter had alternated with other members of said board in being chosen in like manner and under like circumstances temporary chairman to preside at particular meetings of said board, but not at said meeting of December 18th, and that said board never elected, chose or appointed him chairman thereof, or chairman to preside at its meetings in the mayor's absence, and that he never was such chairman or presiding officer, or anything more than merely chairman *pro tempore* of particular meetings as above.

4. That no copy of the summons had ever been delivered to the mayor of the city, and no summons in the action served on the city or mayor, or anything done towards service, except the delivery, December 23, 1882, of four copies, one each to the clerk, said Baxter, Gardner and Rohr, and delivery March 6, 1873, of a copy to Tauck and Meyer, neither of whom was mayor, acting mayor, or president of the common council.

The plaintiff submitted two affidavits of Mr. Winkler, by which it appears:

1. That the book in the city clerk's office containing the record of the proceedings of the common council and of the board of street commissioners for about five years before January, 1884, contains a record of the meeting of the common council, April 11, 1882, the last entry of which is

"the common council adjourned *sine die*," and that there is no further record· of a common council meeting thereafter until. after the municipal election in April, 1883, and that immediately following said record commences the record of a meeting of the board of street commissioners, April 11, 1882, which is followed by the record of other meetings of the board up to December 27, 1882, at each of which meetings some member of the board, either Com. Stacey, Com. Baxter or Com. Voss was chosen chairman *pro tem.*, and the record of the adjournment of each meeting is, " On motion the board adjourned," and at one of such meetings a resolution was passed retaining Mr. Daniel Hill " to assist the city attorney in the suits commenced by E. Mariner."

2. That accounts were audited at said meetings and orders upon the city treasurer drawn therefor on a subsequent day and signed by the commissioner who had been chosen chairman *pro tem.* at the meeting auditing the accounts, and that the common practice had been to hold meetings of the board evenings, prepare the orders on a subsequent day, but bearing the date of the meeting, and they were then signed by the city clerk and chairman *pro tem.* chosen at such meeting.

3. That the city clerk said that every alternate Monday had always, for a series of years, been the regular time for meetings of the common council, if there was one, and of the board of street commissioners if there was none.

4. The affiant states further, upon information and belief, that for some years prior to 1879 and since, it has been the constant practice for the common council to hold one meeting after the election of aldermen, in April each year, and then all but the senior aldermen constituting the board of street commissioners, would resign, and the mayor would also resign at the same time.

On the hearing of the motion, May 16, 1884, the court made an order setting aside the judgment " on the ground that the summons herein was not properly served on said defendant, and the court had no jurisdiction thereof." To review the decision of the court in making that order the plaintiffs in error have sued out the present writ of error.

The errors assigned are:

1. That the court had no jurisdiction or power to vacate the judgment at a subsequent term.

2. That the return of the marshal showed a valid service which was not changed by the affidavits.

We have no difficulty with regard to the first question raised by the plaintiffs in error. It is clear from the record that the application to set aside the judgment was made at the same term it was rendered. The judgment was entered on the 19th day of June, 1883. During the same term, as we infer, (and it is not disputed,) namely, on the 27th of July, 1883, the defendant's attorneys gave notice of a motion to set aside the judgment, to be heard on the 28th of August, and annexed to the notice the affidavits on which they relied. Service of this notice and of the affidavits was acknowledged by the attorneys of the plaintiffs without objection. Why the motion was not argued on the 28th of August is not shown. It was probably postponed by agreement of the parties, or at the suggestion of the court. It did not actually take place until May, 1884, during the continuance of the December special term of 1883. The district judge certifies that by agreement of counsel and the consent of the court, it was then heard, together with a similar motion in the case of *Worts and others* v. *The City of Watertown*, some of the affidavits being used in both cases. From what appears on the face of the record it is to be presumed that the hearing of the motion was continued by consent, or by direction of the court, from the 28th of August until the following term, which was the December special term. The objection, therefore, of want of jurisdiction to set aside the judgment on account of lapse of time is without foundation in fact.

As we have stated, the main question is, whether there was legal service of process on the city. We may dismiss the attempt at service in March, 1873. It was set aside by the court as not made in the manner prescribed by law so as to give the court jurisdiction; and the prosecution was dropped by the plaintiffs. No further steps were taken until after the lapse of nine years and nine months, when a second effort was made

to serve the writ, upon which the present proceedings arose. It cannot be pretended that the action was pending during that long period, without further effort to procure a service of process. The common law provided a remedy in such cases, by a return of *non est inventus*, (or what was equivalent thereto,) and a reissue of the writ from term to term, until a service could be made, or by process of outlawry. The issue of successive writs kept the suit alive so as to prevent the running of the statute of limitations. But the making of one spasmodic and unsuccessful effort, and then abandoning the case for ten years, cannot be regarded as having any such effect, unless aided by some statutory provision. No such provision has been cited. There is a provision in the Revised Statutes of Wisconsin, § 4240, which was evidently intended to meet such a case; but no attempt was made to comply with it. The section referred to is substantially as follows: "An attempt to commence an action shall be deemed equivalent to commencement thereof . . . when the summons is delivered with the intent that it shall be actually served; . . . if a corporation organized under the laws of this State be defendant, to the sheriff or proper officer of the county in which it shall be established by law, or where its general business is transacted, or where it keeps an office for the transaction of business, or where any officer, attorney, agent or other person upon whom the summons may by law be served, resides or has his office; or if such corporation has no such place of business or any officer or other person upon whom the summons may by law be served, known to the plaintiff, . . . to the sheriff or other proper officer of the county in which plaintiff shall bring his action. But such an attempt must be followed by the first publication of the summons, or the service thereof within sixty days."

As the attempted service of the summons in 1873 can have no effect upon the solution of the present controversy, the question then arises whether the attempted service in December, 1882, was a sufficient and legal service. The court below held that it was not. We have already quoted the return of the marshal on that occasion. It appears from this return

that he made the attempted service by delivering a copy of the summons to Wm. H. Rohr, the last mayor of the city, a copy to Henry Bieber, city clerk, a copy to Chas. H. Gardner, city attorney, and a copy to Thomas Baxter, the last presiding officer of the board of street commissioners of the city of Watertown, the office of mayor being vacant and there being no president of the common council nor presiding officer thereof in office. Was this such a service upon the city as the law requires? It clearly was not, unless, by the law of Wisconsin, the circumstances of the case were such as to dispense with a literal compliance with the charter. The charter requires service on the mayor of the city. No such service was made. There was no mayor in office at the time. The last mayor had resigned, and his resignation had taken effect. Service on him was of no more avail than service on an entire stranger. The case is different from those in which we have held that a resignation of an officer did not take effect until it was accepted or until another was appointed. In those cases either the common law prevailed or the local law provided for the case and prevented a vacancy. Such were the cases of *Badger* v. *Bolles*, 93 U. S. 599; *Edwards* v. *United States*, 103 U. S. 471; *Salamanca* v. *Wilson*, 109 U. S. 627. In *Badger* v. *Bolles* the law of Illinois was in question, and it appeared that by the constitution of that State the officers elected were to hold their offices until their successors were elected and qualified. In *Edwards* v. *United States* the case arose in Michigan, and it was held that the common-law rule prevailed there, by which the resignation of a public officer is not complete until the proper authority accepts it or does something tantamount thereto, such as appointing a successor. In *Salamanca* v. *Wilson*, a case arising in Kansas, the treasurer of a township moved across the township line into another township. By the constitution of Kansas, township officers were to hold their offices one year from their election and until their successors were qualified, and nothing was said either in the constitution or laws about residence or non-residence. We held that the removal did not necessarily vacate the office and that service of summons on the treasurer was good.

In the present case, it is true, the consolidated charter of the city of Watertown provides (chap. 1, sec. 6) that "all elective officers except aldermen shall, unless otherwise provided, hold their respective offices for one year, and until their successors are elected and qualified." But that provision has respect to ordinary cases. It cannot apply in a case of death; and does not apply in case of resignation; for by chapter 61 of the Private and Local laws of 1867, relating to Watertown (sec. 1), it is declared that "any city officer who shall resign his office shall file with the city clerk his resignation in writing, directed to the mayor, and such resignation shall take effect from the time of filing the same." And by chapter 204 of the Private and Local laws of 1871, relating to Watertown, it is declared (sec. 2) that "the resignation of the mayor shall be in writing, directed to the common council or city clerk, and filed with the city clerk, and shall take effect at the time of filing the same." These provisions of the statute law are decisive, and preclude the operation of any such rule as was recognized in _Badger_ v. _Bolles_ and _Edwards_ v. _United States_. The service upon Rohr, the last mayor, therefore, was of no force, and had no effect whatever. The same thing may be said of the service on Baxter, the last presiding officer of the board of street commissioners.

. The question then is reduced to this, whether, in case the mayor has resigned, and there is no presiding officer of the board of street commissioners, (a body which seems to take the place of the common council of the city for many purposes,) service of process on the city clerk, and on a conspicuous member of the board, is sufficient. If the common law (which is common reason in matters of justice) were permitted to prevail there would be no difficulty. In the absence of any head officer, the court could direct service to be made on such official persons as it might deem sufficient. But when a statute intervenes and displaces the common law, we are brought to a question of words, and are bound to take the words of the statute as law. The cases are numerous which decide that where a particular method of serving process is pointed out by statute, that method must be followed, and the rule is espe-

cially exacting in reference to corporations: *Kibbe* v. *Benson*, 17 Wall. 624; *Alexandria* v. *Fairfax*, 95 U. S. 774; *Settlemier* v. *Sullivan*, 97 U. S. 444; *Evans* v. *Dublin &c. Railway*, 14 M. & W. 142; *Walton* v. *Universal Salvage Co.*, 16 M. & W. 438; *Brydolf* v. *Wolf, Carpenter & Co.*, 32 Iowa, 509; *Hoen* v. *Atlantic and Pacific Railway Co.*, 64 Missouri, 561; *Lehigh Valley Ins. Co.* v. *Fuller*, 81 Penn. St. 398. The courts of Wisconsin strictly adhere to this rule. *Congar* v. *Railroad Co.*, 17 Wisconsin, 477, 485; *City of Watertown* v. *Robinson*, 59 Wisconsin, 513; *City of Watertown* v. *Robinson*, 69 Wisconsin, 230. The two cases last cited related to the charter now under consideration. In the first case, service was made upon the city clerk and upon the chairman of the board of street commissioners whilst the board was in session, in the absence of the mayor, who could not be found after diligent search. The court, after referring to the provisions of the charter and the Revised Statutes on the subject, say: "The question whether the Revised Statutes control as to the manner of service is not a material inquiry here, because both the charter and general provision require the service to be made upon the mayor, but no service was made upon that officer as appears by the return of the sheriff. The principle is too elementary to need discussion, that a court can only acquire jurisdiction of a party, where there is no appearance, by the service of process in the manner prescribed by law." In the last case (decided in 1887) service was made in the same manner as in the previous one, and the court say: "When the statute prescribes a particular mode of service, that mode must be followed. *Ita lex scripta est.* There is no chance to speculate whether some other mode will not answer as well. This has been too often held by this court to require further citations. . . . When the statute designates a particular officer to whom the process may be delivered, and with whom it may be left, as service upon the corporation, no other officer or person can be substituted in his place. The designation of one particular officer upon whom service may be made excludes all others. The temporary inconvenience arising from a vacancy in the office of mayor affords no good reason for a substitution of some other officer

in his place, upon whom service could be made, by unwarrantable construction not contemplated by the statute."

It is unnecessary to look farther to see what the law of Wisconsin is on this subject. It is perfectly clear that by that law the service of process in the present case was ineffective and void.

The counsel for the plaintiff in error endeavor to avoid this conclusion by referring to the act of 1879, which declares that "the board of street commissioners of said city, and the chairman of said board, shall have concurrent power with the mayor and common council of said city, in the appointment of inspectors and clerks of election, and shall have all other powers conferred, by law, upon said mayor and common council, subject to the control of said common council, except the power of levying taxes." It is contended that this act gives to the chairman of the board of street commissioners the same power as the mayor has to receive service of process against the city. But the Supreme Court of Wisconsin, as we have seen, has expressly decided otherwise. And the language of the act of 1879 is not that the chairman of the board shall have the power of the mayor, but that the board and the chairman shall have concurrent power with the mayor and common council, — evidently referring to the power of the body, not to the separate power of the officers. Besides, if it were conceded that the chairman of the board had the same power as the mayor, Baxter, who was served with process as chairman of the board, was not permanent chairman, but was only temporary chairman of the particular meeting, and ceased to have any official position as such after the meeting adjourned. He was in no sense chairman of the board at the time when he was served with process. This fact, however, does not seem material in the view of the Supreme Court of Wisconsin; for in the cases before it, the chairman of the board was served with process during its actual session and whilst he was presiding. In the construction of a state statute, in a matter purely domestic, (as this is,) we always feel strongly disposed to give great weight to the decisions of the highest tribunal of the State. *Burgess* v. *Seligman*, 107 U. S. 20.

There is a question entirely outside of the one which we have been discussing ; it is, whether the state law, as thus ascertained, is objectionable on the score of being repugnant to the Constitution of the United States. Does it impose embarrassments in the way of the creditor in pursuit of his claim, which did not exist when his debt was created? The point is not distinctly made by the counsel of the plaintiffs in error, although it is hinted at in their brief. But no statute has been pointed out to us, showing any change in the law of the State in this regard. As the record stands, we have no sufficient ground for discussing the question in the present case.

With motives we have nothing to do. Certainly, improper motives cannot be attributed to a state legislature in the passage of any laws for the government of the State. Individuals may be actuated by improper motives, and may take advantage of defects and imperfections of the law for the purpose of defeating justice. The mayor of Watertown may have been actuated by such a motive in resigning his office immediately after being inducted into it. But he had a legal right to resign ; and if the plaintiffs are prejudiced by his action, it is *damnum absque injuria*. The plaintiffs are in no worse case than were the creditors of the city of Memphis after the repeal of its charter and the establishment of a taxing district in its stead. The State has plenary power over its municipal corporations, to change their organization, to modify their method of internal government, or to abolish them altogether. Contracts entered into with them by private parties cannot deprive the State of this paramount authority. See *Meriwether* v. *Garrett*, 102 U. S. 472.

The cases of *Broughton* v. *Pensacola*, 93 U. S. 266, and *Mobile* v. *Watson*, 116 U. S. 289, cannot aid the plaintiffs in this case. Those were cases in which a new name was given to an old corporation, or a new corporation was made out of an old one, — that was the substance of it — and the question was whether the new corporation, or the old corporation by its new name, was liable for the old debts ; and we held that it was. That was a question of liability, not a question of procedure. There the way was open for looking into the actual

relations of the old and new corporations, and deciding according to the justice of the case. Here we are bound by statute; and not by the state statute alone, but by the act of Congress, which obliges us to follow the state statute and state practice. The Federal courts are bound hand and foot, and are compelled and obliged by the Federal legislature to obey the state law; and according to this law the judgment of the Circuit Court was correct and is, therefore,

*Affirmed.*