### WHALEN PAPER & PULP MILLS, Limited, v. DAVIS, Director General of Railroads.

(Court of Appeals of District of Columbia. Submitted February 7, 1923. Decided April 3, 1923.)

#### No. 3904.

1. **Statutes ⟜227—"May" is sometimes to be construed as mandatory; "shall."**
   Though ordinarily the word "may," when used in a statute, imports permission only, it is employed at times as equivalent to the word "shall."
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, May; Shall.]

2. **Railroads ⟜5½—New, vol. 6A Key-No. Series—Process in suits against federal Agent must be served on carrier under contract to conduct litigation.**
   Transportation Act Feb. 28, 1920, § 206(b), providing that process in a suit upon a federal Agent may be served on any agent or officer of the carrier operating the railroad, if a contract has been made with such carrier for the conduct of litigation arising out of operation during federal control, and if no such contract has been made process may be served upon agents or officers designated, with specific provisions for notice of contract with carriers or designation of officers, was clearly intended to be regulatory in character, and did not give an option to the plaintiff to serve process on the federal Agent personally.

3. **Railroads ⟜5½—New, vol. 6A Key-No. Series—Statutory method of serving process on federal agent exclusive.**
   Permission to serve process on the federal Agent, in an action arising out of the federal control of railroads, in the manner prescribed by Transportation Act Feb. 28, 1920, § 206(b), implies that the authority cannot be exercised in any other manner.

4. **United States ⟜136—Process must be served in manner expressed in consent to be sued.**
   When the United States consents to be sued, the method of procedure prescribed by Congress as part of the consent must be strictly followed, in order to secure jurisdiction, and that rule applies where particular mode of serving process is pointed out by the statute.

Appeal from the Supreme Court of the District of Columbia.

Action by the Whalen Paper & Pulp Mills, Limited, against James C. Davis, Director General of Railroads and Agent of the President.

From an order sustaining defendant's motion to quash the service of summons, plaintiff specially appeals. Affirmed.

E. C. Brandenburg and L. M. Denit, both of Washington, D. C., for appellant.

John C. Brooke and John F. Finerty, both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. This is a special appeal from an order of the Supreme Court of the District of Columbia, quashing the service of summons in the case. The action was begun by the Whalen Pulp & Paper Mills, Limited, against James C. Davis, Director General of Railroads and Agent of the President. The plaintiff averred that it had shipped certain consignments of crude sulphur from Bryanmound, Tex., to Prince Rupert, Canada, over the Houston & Brazos Valley Railroad and other systems of transportation, then under federal control, and that an excessive rate of freight had been exacted thereon, for which overcharge plaintiff prayed judgment.

A writ of summons was issued to the marshal, who made a return of personal service upon the defendant. The defendant thereupon filed a motion to quash the service aforesaid, claiming that a contract had been made under the statute with the Houston & Brazos Valley Railroad, for the conduct by it of litigation arising out of its operation during federal control, and accordingly that no valid service of process could be made upon the defendant herein except only by service upon an agent or officer of the said railroad, authorized by law to be served with process in actions brought against it. The motion was sustained by the trial court, and the service was quashed. This appeal is brought to challenge that ruling.

The issue thus presented is governed by paragraphs (a) and (b) of section 206, Transportation Act 1920, 41 U. S. Stat. 461. The first of these paragraphs provides that certain classes of actions, like this one, arising out of the operation of railroads while under federal control, may, after the termination thereof, be brought against an agent to be designated by the President for that purpose, and that such actions may be brought in any court which, but for federal control, would have had jurisdiction of the action, had it arisen against the carrier. The defendant is the duly appointed and acting statutory agent thus provided for, and no objection is made by him upon that point.

The second paragraph relates to the method of serving process upon the defendant in such cases, and reads as follows:

"Sec. 206. (b) Process may be served upon any agent or officer of the carrier operating such railroad or system of transportation, if such agent or officer is authorized by law to be served with process in proceedings brought against such carrier and if a contract has been made with such carrier by or through the President for the conduct of litigation arising out of operation during federal control. If no such contract has been made process may be served upon such agents or officers as may be designated by or through the President. The agent designated by the President under sub-

division (a) shall cause to be filed, upon the termination of federal control, in the office of the clerk of each District Court of the United States, a statement naming all carriers with whom he has contracted for the conduct of litigation arising out of operation during federal control, and a like statement designating the agents or officers upon whom process may be served in actions, suits and proceedings arising in respect to railroads or systems of transportation with the owner of which no such contract has been made; and such statements shall be supplemented from time to time, if additional contracts are made or other agents or officers appointed."

It may be said in brief that paragraph (a) provides for the bringing of actions like this, after the termination of federal control, and prescribes the venue thereof, while paragraph (b) specifies the manner in which service of process may be made upon the defendant in such cases. For the latter purpose the carriers are divided into two classes: First, those with whom contracts have been made for the conduct by them of litigation arising out of federal operation; and, second, those with whom no such contracts have been made. In cases involving the first class, process may be served upon the defendant by means of service upon the officers of the carriers; in cases involving the second class, service may be made upon the defendant by means of service upon agents to be designated by the defendant for that purpose. The section contains no reference whatever to the service of process upon the defendant by means of personal service upon him, in either class of cases.

This case comes within the first class, since a contract was made with the carrier for the conduct of litigation by it as aforesaid; nevertheless summons was not served upon the defendant by means of service upon the officers of the carrier, as prescribed by the paragraph, but by means of service upon the defendant personally. In support of that procedure it is contended by the plaintiff that the use of the word "may" in paragraph (b) indicates that its provisions are intended to be permissive only, and accordingly that it is optional with a suitor whether process shall be served as prescribed by the paragraph, or by means of service upon the defendant personally. The defendant, upon the other hand, claims that the prescribed methods of service are exclusive and mandatory.

[1] It must be admitted that ordinarily the word "may" imports permission only, but that at times it is employed in legislation as equivalent to the word "shall." The term has been the subject of innumerable judicial interpretations. These, however, will not now be discussed, nor even cited, since we think that the context and manifest purpose of the present enactment plainly indicate that in this instance the word is used in a mandatory sense.

[2] While the carriers were under federal control the venue of actions like this was governed by General Orders 18, 18a, 26, and 50, promulgated by the Director General of Railroads. The courts take judicial notice of such orders. Haas v. Henkel, 216 U. S. 462, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112. The orders directed that all such actions against the Director General of Railroads must be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action or in the county or district

where the cause of action arose, and that process may be served therein upon the operating officials, operating the carrier for the Director General of Railroads. The orders expressly declared it to be necessary in the public interest that the venue in such cases should be thus restricted. The provision for venue, therefore, was expressly mandatory, and the cognate provision for process was impliedly so, although the word "may" was employed as in this instance in respect thereto. Both provisions were clearly intended to be regulatory in character, and the given procedure was not left to the election of the suitor.

When the federal control of carriers was terminated by the Transportation Act of 1920, Congress provided by section 206 for the survival against the government of causes of action based upon the federal operation of the carriers, and again prescribed the venue and the method of serving process therein. The latter provisions, like their predecessors, were designed as authoritative provisions for the regulation of such litigation, and like them were mandatory in character. Accordingly the mode of service attempted in this case was unauthorized, and was rightly set aside.

[3] These conclusions, furthermore, are consistent with the fair import of the language of paragraph (b), for where permission is granted under certain express conditions to serve process in a given manner, it is thereby implied that the authority cannot be exercised under opposite conditions. In the present instance that interpretation is sustained, and indeed required, by the fact that paragraph (b), while providing with great particularity for the service of process upon the defendant by means of service upon his legal representatives, makes no reference whatever to the service of process upon him personally.

[4] It will be understood, of course, that the foregoing reasons all rest finally upon the conceded rule that, when the United States consents to be sued, the method of procedure prescribed by Congress as part of the consent must be strictly followed, in order to secure jurisdiction; for in such case the remedy of the suitor depends wholly upon the government's consent, and it cannot be enlarged beyond the clear terms thereof. This rule applies also "where a particular method of serving process is pointed out by the statute." Amy v. Watertown, 130 U. S. 301, 317, 9 Sup. Ct. 530, 32 L. Ed. 946; Schillinger v. United States, 155 U. S. 163, 166, 15 Sup. Ct. 85, 39 L. Ed. 108; McElrath v. United States, 102 U. S. 426, 440, 26 L. Ed. 189; Price v. United States, 174 U. S. 373, 375, 19 Sup. Ct. 765, 43 L. Ed. 1011.

The decision is affirmed, with costs.