## UNITED STATES MERCHANTS' & SHIPPERS' INS. CO. v. ELDER DEMPSTER & CO., Limited, et al.

### No. 64.

Circuit Court of Appeals, Second Circuit.

Dec. 12, 1932.

Single & Hill, of New York City (Wilmer H. Eberly, of New York City, of counsel), for appellant.

Haight, Smith, Griffin & Deming, of New York City (Wharton Poor and Herbert M. Statt, both of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The actions were upon the breach of contracts of affreightment, probably made and to be performed outside the United States, though the record is too uncertain to make a finding. One plaintiff is a corporation of New York, the other of California, and the defendant is a British corporation, acting as ships' agent for two lines of steamships. It has several places of business, one in the Port of New York, where concededly its activities are so substantial and continuous as to make it "present" in the sense that it could there be sued. The only question, mooted in the court below, was whether the summonses were served upon a "managing agent" as required by section 229 of the New York Civil Practice Act, and whether the validity of the service is to be determined by the law of that state.

The actions were brought in the state court and removed before complaints filed. The defendant moved by affidavit to set aside the service and the plaintiffs answered; the judge referred the issue to a master, who reported that the process had not been served upon a managing agent, and this the judge confirmed and set aside the service. The evidence disclosed the following facts: As ships' agent, the defendant's business is to load and

discharge the vessels of the two steamship lines which come to this port. It has hired a pier for that purpose, at which the ships berth, and there it does all that is necessary to the discharge, providing stevedores to handle the cargoes, and space where the several parcels can be assorted and delivered. It advertises the vessels, and books cargo for them on outward voyages, accepts delivery at the pier, gives dock receipts, and signs bills of lading, providing stevedores also for the ladings. While in port it attends generally to the ships' needs, supplying them on occasion with bunkers—though the chief supply is at Norfolk—and arranging for their repairs and stores. It collects the outbound freight, which it remits to Liverpool, its chief office, and for which it there accounts to the lines.

Its business is therefore divided between the physical lading, discharge and care of the ships, and securing cargoes and collecting freights; all this requires a number of employees and some one to direct them. For a great many years one Bacon, had acted, and been advertised, as its New York agent, and upon him devolved all that part of the business which did not take place on the pier. He had leased the pier, he booked the cargoes, signed all the bills of lading, collected the freights, and remitted the proceeds to Liverpool, meanwhile mingling all the funds in his own account with the defendant's consent. He engaged all employees except three, whom the defendant sent over from Liverpool: A marine superintendent, one Evans, a superintendent engineer, and a superintendent purser, who themselves employed two stenographers, paid by Bacon. The duties of these three are not very clearly disclosed, but it may be assumed that they had general direction of what went on at the pier. Evans consulted frequently with Bacon, and probably Bacon's word would be enough to dismiss him, though the decision would have to come from the defendant at Liverpool. Bacon audited and paid all the bills, including those incurred by Evans, but Evans did not consult him before ordering ships' supplies. Bacon was paid by commission on the freights collected; he attended to all the bookkeeping and business with shippers, both as to discharge and lading. He paid all employees, except perhaps the Englishmen, as to whom the record is not clear. He had no power to settle claims against the defendant, but referred them to Liverpool.

As to the "presence" of the defendant, which subjects it to local jurisdiction, federal law controls; we are not concerned with that, but only with the manner in which the defendant may be reached by process; strictly, with the manner in which process shall be served. In an action at law we follow state practice as to this. Amy v. Watertown, No. 1, 130 U. S. 301, 9 S. Ct. 530, 32 L. Ed. 946; Massachusetts, etc., Co. v. Concrete Steel Bridge Co., 37 F.(2d) 695 (C. C. A. 4). Indeed, in a removed case it would be extraordinary if jurisdiction over the person, validly acquired in the state court, became invalid thereafter. The business of the defendant, itself an agency, was either in the hands of Bacon, or of Evans, or of both; we are not clear that both could not be "managing agents"; but we will assume the opposite, because it appears to us plain that Bacon was really in charge. Though Evans had an autonomy of his own as to the pier, yet if things went ill there, Bacon would hardly have regarded even that outside his province. Aside from this the whole management of the New York business was in his hands, and he was the only one publicly put forward as the defendant's representative.

O'Brien, J.'s language in Taylor v. Granite State Provident Ass'n, 136 N. Y. 343, 346, 32 N. E. 992, 993, 32 Am. St. Rep. 749, that a managing agent must have "general powers * * * of judgment and discretion," has been often quoted as though it were a definition, though in some cases it is hard to find that the agent had very much of either. Tuchband v. Chicago & Alton R. R. Co., 115 N. Y. 437, 22 N. E. 360; Cochran, etc., Co. v. Monroe Binder Board Co., 197 App. Div. 221, 188 N. Y. S. 697, affirmed 232 N. Y. 503, 134 N. E. 547. However, in spite of Cochran, etc., Co. v. Monroe, etc., Co., the fact that the agent has no power to close contracts, but must refer them to the home office, still apparently remains an important factor in the result. Holzer v. Dodge Bros., 233 N. Y. 216, 135 N. E. 268. This is the last case in the Court of Appeals which deals with the question.

None of the decisions in that court or in the Appellate Divisions help us much here, as is so often the case when a colloquial phrase comes up for interpretation; as, for example, the issue of a corporation's "presence" within the state. Being unwilling to commit themselves to an inflexible premiss, courts are thrown back in each case upon the situation as a whole which happens to be before them, and merely summarize the details. It is usually safer to abandon the pretence of deductive reasoning, and have recourse to more naive impressions; to accept the phrase

with its fringe of implication, and try to learn whether a particular complex is within it. In the end a vague concept may emerge, but scarcely a rule. Proceeding in this way, it seems to us pretty clear that Bacon was the local head of the defendant's New York business, so far as it had any; and that it had a head. It would be an extreme hardship to say that, though it was doing a very substantial and a continuous business in New York, the local procedure did not provide any means by which it could be sued. Hewitt v. Canadian Pac. Ry., 124 Misc. 186, 188, 207 N. Y. S. 797. Even though we take literally the language in Taylor v. Granite State Provident Ass'n, supra, 136 N. Y. 343, 32 N. E. 992, 32 Am. St. Rep. 749, Bacon exercised "judgment and discretion," not only in seeking and selecting cargo, in deciding when to collect freights in advance, in the remission and retention of funds, and in advertising, but also in hiring employees and in the occasional movement of ships in the port; and he regularly made contracts without referring them to Liverpool. So far as the business did not consist of the routine at the pier he decided everything. We hold that the service was good within section 229 of the New York Civil Practice Act.

The defendant raises for the first time upon appeal quite another question: Whether it was not an undue restraint upon foreign commerce to compel it to try in New York a cause of action not arising out of, or connected with, any business done there. The limits of this doctrine—a sprout of such cases as Old Wayne Life Association v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. Ed. 345, and Simon v. Southern Ry. Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492—have not yet been fixed. Davis v. Farmers' Co-operative Co., 262 U. S. 312, 43 S. Ct. 556, 67 L. Ed. 996; Atchison, T. & S. F. Ry. v. Wells, 265 U. S. 101, 44 S. Ct. 469, 68 L. Ed. 928; Michigan Central Ry. Co. v. Mix, 278 U. S. 492, 49 S. Ct. 207, 73 L. Ed. 470. Perhaps it is in every case enough to defeat jurisdiction that the plaintiff is a nonresident (Guerin Mills v. Barrett, 254 N. Y. 380, 385, 173 N. E. 553), though see Harris v. American Railway Express Co., 56 App. D. C. 264, 12 F.(2d) 487. Michigan Central Ry. Co. v. Mix, moreover, settles it that the plaintiff's residence will not inevitably support the action. The record was not prepared to raise any such issues; we know little or nothing of the causes of action, or of the relation of the defendant's New York business to them. We have no way of telling what would be the burden upon it of trying the actions here, or what is the excuse of the plaintiffs for selecting New York. After the complaints have been served, the defendant may raise the point and the district court will decide it. Whether the defendant abandoned it by not raising it ab initio we do not now decide; what are the controlling considerations we leave open. But our mandate is without prejudice to the defendant's right to present it.

Orders reversed without prejudice.