**DOHERTY v. KALMBACH.**

No. 6715.

United States Court of Appeals for the District of Columbia.

Argued Oct. 9, 1936.

Decided Nov. 16, 1936.

Petition for Modification of Opinion and Judgment Denied Dec. 31, 1936.

Woodson P. Houghton and Kahl K. Spriggs, both of Washington, D. C., for appellant.

Alvin L. Newmyer and David G. Bress, both of Washington, D. C., for appellee.

Before ROBB, VAN ORSDEL, GRONER, and STEPHENS, JJ.

GRONER, J.

This is one of fourteen actions filed in the District Court by various plaintiffs—appellees here—against Henry L. Doherty, appellant. The grounds of the actions are not involved in this appeal, and the only difference between any of them is as to the time the several declarations were filed. This particular action was commenced on April 15, 1935, by the filing of a declaration. On that date process issued, and on May 17, 1935, the marshal of the District made the return "not to be found." Thereafter, on July 20, 1935, another summons issued, and again on August 28, 1935, the marshal made the return "not to be found." On November 27, 1935, attorneys for appellee filed a motion in the lower court reciting that the defendant (appellant here) was evading service of process and that several writs theretofore issued had not been served by the marshal "because of the difficulty in apprehending said defendant," and praying the appointment of "an Elisor or a person to be deputized by this Honorable Court for the purpose of serving process upon the defendant." The trial judge thereupon made the following order:

540

"Upon consideration of the motion of the plaintiff filed in the above cause on the 27 day of November, 1935, it is by the Court, this 27 day of November, 1935,

"Adjudged and ordered that the said motion be and the same is hereby granted and that Gerald W. Sickler, Esquire, be and he is hereby appointed an Elisor in said cause for the purpose of serving the present pluries writ herein upon the defendant herein or any subsequent writs which may issue out of this Court against the said defendant in this cause and the said Gerald W. Sickler is hereby deputized as a deputy United States Marshal for the purpose of serving process, as aforesaid, in said cause, the return of service to be made and shown by the affidavit of service by said Gerald W. Sickler."

After the appointment of Sickler, attorneys for appellee delivered to him a writ which had been withdrawn from the marshal's office, and on December 4, 1935, Sickler made the return "not found." On December 6, 1935, another writ was issued, and finally on December 14, 1935, Sickler made personal service on appellant, as follows:

"Served copies of the declaration, notice to plead, affidavit, and this summons, on the Defendant, Personally—the 14th day of December, 1935

"Gerald W. Sickler, Elisor."

On January 8, 1936, appellant entered a special appearance by his attorneys and moved to quash the service on the grounds that Sickler was not authorized to serve the process and that the order of November 27 was ineffective and void in so far as it attempted to appoint Sickler a United States deputy marshal or an elisor. The lower court heard the motion and overruled it on the ground that, since there is a rule of the District Court (Law Rule 19, par. 3) which empowers it to appoint a special process server, the court was authorized to make the order it did.

This is a special appeal from the order overruling appellant's motion to quash. There are several assignments of error but, taken as a whole, they challenge the validity of the order of November 27, first, on the ground that the order is impossible of accurate construction in that it attempts to appoint one person in two different and inconsistent capacities at the same time; second, that the court was without authority to appoint a United States deputy marshal; and, third, that the court was without authority to appoint an elisor—because no disqualification of the marshal and the coroner was shown.

Section 311, Title 18, of the District of Columbia Code of 1929 (Act of March 3, 1901, § 186, 31 Stat. 1220) provides for the appointment of a United States Marshal for the District of Columbia to "have generally, within the District, in addition to the powers and duties herein imposed upon him, the same powers and perform the same duties as provided for by the general statutes relating to marshals of the United States." These include the duty to attend the District Court and to execute all lawful precepts issued under the authority of the United States. Title 28 U.S.C.A. § 503.

Section 328, Title 18, District of Columbia Code (Act of March 3, 1901, § 197, 31 Stat. 1221) provides: "Whenever the marshal is a party to any cause or interested therein, or it is unfit on other grounds that he should serve and execute the process to be issued therein, such process shall be issued to the coroner, and he shall be paid the same fees and compensation for serving and executing the same which would be payable to the marshal in similar cases, and shall account therefor to the Treasury of the United States," etc.

■■ I. There can be no doubt that the District Court was without power to appoint a deputy marshal. There is no statute authorizing such an appointment by the court. Sections 492 and 493, title 28 U.S.C.A., lodge the exclusive power of appointment in the marshal. But we are of opinion that the order does not undertake to appoint Sickler a deputy United States Marshal. The correct construction of the order is that Sickler is appointed an elisor for the purpose of serving such writs as might be issued, and the concluding paragraph of the order, reading "is hereby deputized as a deputy United States Marshal for the purpose of serving process, as aforesaid"—correctly understood—means deputized in the manner of a deputy United States marshal for the purpose of serving process as an elisor. In other words, that Sickler is appointed an elisor and as such deputized to serve process as or in the manner of a deputy marshal.

■ II. As we have seen, however, appellant contends that, even if this be the true construction of the order, it is still

void, since conditions justifying the appointment of an elisor did not exist. This argument is drawn from the common-law definition of the word "elisor," of which Blackstone says—"If the sheriff be not an indifferent person; as if he be a party in the suit, or be related either by blood or affinity to either of the parties, he is not then trusted to return the jury, but the *venire* shall be directed to the corners." And "if any exception lies to the coroners, the venire shall be directed to two clerks of the court, or two persons of the county named by the court, and sworn. And these two, who are called *elisors,* or electors, shall indifferently name the jury—." 3 Bla.Com. 354, 355.

The Supreme Court of California, where the practice of appointing elisors seems to prevail in much greater degree than anywhere else, described an elisor in this language:[1] "Now, the word 'elisor' has a 'peculiar and appropriate meaning in law,' as much as any word that can be suggested. It is not used at all in common language. No one in private or business circles would think of calling an agent or trustee an 'elisor.' It can be found rarely, if ever, in general literature. It is doubtful if the majority of men of good intelligence have any notion as to its meaning. Practically it is known and used alone in law literature, and in the law its meaning is clear and unquestioned. It has always meant, and means now, a person appointed to perform certain duties pertaining to certain officers, when the latter are disqualified. He was originally confined to the duty of returning a jury in the event of such disqualification; but in some states his duties are extended to the service of other process, but only in the event of the disqualification of some other officer. * * * In Bouvier's Law Dictionary 'elisors' are defined as 'persons appointed by the court to return a jury when the sheriff and coroner have been challenged as incompetent.' Such is the definition given in all the dictionaries, and such the sense in which the word is used in all the law-books to which our attention has been called."

The few cases we have been able to find involving the appointment of elisors recognize a positive limitation upon the power of courts to appoint such officers and hold that an appointment will be valid only when both the sheriff and the coroner are disqualified to discharge the duty required. Bruner v. Superior Court, supra. See, also, Turner v. Billagram, 2 Cal. 520 (elisor to replevy cattle); Wilson v. Roach, 4 Cal. 362 (elisor to attach person for contempt); People v. Young, 108 Cal. 8, 41 P. 281 (elisor to summon jury); People v. Fellows, 122 Cal. 233, 54 P. 830 (elisor to summon jury); People v. Sehorn, 116 Cal. 503, 48 P. 495 (same); Jackson v. Chew, 3 Cow.(N.Y.) 298 (elisor to execute writ of possession); Anonymous, 23 Wend.(N.Y.) 102 (elisor to serve attachment); Reed v. Moffatt, 62 Ill. 300, 301 (elisor to serve process).

The case of Jackson v. Rathbone, 3 Cow.(N.Y.) 296, was one in which appointment of elisors to serve process was requested on the ground that the sheriff and the coroner were both members of the society interested in the suit. The court refused to make the appointment on the ground that such interest was insufficient as a disqualification. And in Orscheln v. Scott, 79 Mo.App. 534, that court also said until both the sheriff and the coroner are disqualified, the court is without power to nominate and appoint an elisor to serve the writ. Dolan v. Topping, 51 Kan. 321, 32 P. 1120, is substantially to the same effect.

In this case there was no effort to show actual disqualification of the marshal and the coroner. All that is claimed is that the marshal or his deputies had been unable to find and to serve the defendant. In view of this we think that, the disqualification of both officers not being shown, this was not a proper case under the common-law rule for the appointment of an elisor.

Nor are we able to say that there was authority for the appointment of an elisor under the rule of court which is invoked by appellee. The exact language of the rule is: "The service of all process, mesne and final, shall be by the marshal of said District, or his deputy, or by some other person specially appointed by the court or judge for that purpose, and not otherwise. In the latter case, the person serving the process shall make affidavit thereof." The rule was adopted and promulgated under the authority of an act of Congress passed April 19, 1920, 41 Stat. 555 (D.C.Code 1929, T. 18, § 51), which provided as follows: "The general term of said court * * * may establish written rules regu-

---

[1] Bruner v. Superior Court of San Francisco, 92 Cal. 239, 28 P. 341, 343.

lating pleading, practice and procedure, and by said rules make such modifications in the forms of pleading and methods of practice and procedure prescribed by existing law as may be deemed necessary or desirable to render more simple, effective, inexpensive, and expeditious the remedy in all suits, actions, and proceedings." ·

By reference to the statute it can be seen at once that authority is given to modify by rules the forms of pleading and methods of practice and procedure prescribed by existing law. And this at once brings us to consider whether the words "practice and procedure" include the mode of serving process.

It is elementary that in a civil suit in personam jurisdiction over the defendant implies among other things either voluntary appearance or legal service of process; but there is a distinction between the necessity for valid service of process—which is jurisdictional—and the manner of service of process—which is procedural. This difference is pointed out in a number of cases. See Sewchulis v. Lehigh Valley Co. (C.C.A.2) 233 F. 422; The Steamer St. Lawrence, 1 Black(66 U.S.) 522, 17 L. Ed. 180; Amy v. Watertown, 130 U.S. 301, 9 S.Ct. 530, 32 L.Ed. 946; Shepard v. Adams, 168 U.S. 618, 18 S.Ct. 214, 42 L. Ed. 602; J. E. Petty & Co. v. Dock Co. (C.C.A.) 283 F. 341. In these cases it is held that the mode or manner of serving process comes under the category of practice and procedure and is not jurisdictional. We are, therefore, of opinion that Law Rule 19 of the lower court is valid. And, so construed, it provides a new mode of serving process in the District of Columbia. Prior to its adoption, under the statutes then in effect valid service could be made only by the marshal·or his deputy or by the coroner in case of the marshal's disqualification. Now by virtue of the rule valid service may be made, first, by the marshal or his deputy, or, second, by a person specially appointed by the court for that purpose. The effect of the rule is to remove the coroner as a process server and confine the service of process exclusively to the marshal and his deputy and a person appointed by the court for that purpose. Considered in this aspect, the common-law rule that an elisor may be appointed upon the disqualification of both marshal and coroner is abrogated, and there is now no longer any provision or authority in the District of Columbia for the appointment of an elisor; so that neither at common law—because there was no disqualification of the marshal and coroner—nor under the rule—because, as we have seen, only the marshal, his deputy, or a person appointed by the court can serve process—was there authority for the appointment of an elisor.

Here we have an order which definitely and specifically appoints Sickler as elisor and authorizes him, as elisor, to serve the process, and his return is made as elisor. And, unless we can entirely disregard the language used in the appointment and treat it as a nullity, we are obliged to reach the conclusion that the appointment was without validity and effect. But because we think the order ought to be sustained, rather than annulled, if it can validly be done, we have been at pains to try to find some authority on which to declare that the court meant something else than what it said in the order. But we think we may not do so without doing violence to the ordinary rules of construction, and, since the order is by its own terms clear and unambiguous, there is no authority to construe it so.as to eliminate the express words of appointment or to hold them for naught.

An interesting case in point on ·the question we are discussing is Orscheln v. Scott, supra. That was an action brought to recover damages for an assault. There was a trial and judgment for plaintiff, and on appeal the ground pressed for reversal was the action of the court in overruling the motion to quash the special panel of jurors summoned by an elisor. Plaintiff had filed a motion in the case charging the sheriff with bias and prejudice and praying for the appointment of one or more impartial persons to act as elisors to summon the special jury. The motion was sustained, and the court appointed one McClanahan, who executed the writ. There was nothing to show that the coroner was disqualified, and it was insisted that the order was improper without such showing. That point was conceded, but the defense was that McClanahan, who had been appointed and acted as elisor, was also the coroner of the county; and it was contended that the writ was actually served by the proper officer. To this the court said: "But he [the elisor] was a particular officer of the court acting under its special authority as distinct from the coroner, who is a general officer of the law. He was au-

thorized [by the order] to serve the writ not as coroner but as elisor. His commission from the court [in the circumstances] conferred no valid authority on him to serve the writ and the mere fact that he was coroner did not impart any validity to his act as elisor."

Precisely the same view was held by the Supreme Court of Maine in Graves v. Smart, 75 Me. 295. There the plaintiff in the action was a deputy sheriff. Under the Maine statute it was not lawful for the sheriff to serve the summons in a case in which his deputy was a party. The writ was consequently directed to the coroner, but was served by the sheriff by an attachment on real estate, the defendant being a nonresident. In that case, as in the Missouri case, it developed in the hearing that the serving officer was also the coroner, and it was contended that this fact cured the infirmity and made the service valid. But the court said: "The writ was properly directed to a coroner. The direction to the sheriff was stricken out. The service was made by the sheriff. It matters not that the sheriff was at the same time a coroner. He did not act as such, as appears by his return. It follows that there has been no legal service. It was not in accordance with the mandate of the writ, nor by one authorized to serve." See, also, on this same subject, Arnold and Jemison v. Wynn, 26 Miss. 338.

So, unless we disregard entirely the definite and established meaning of the word "elisor," we are forced to the conclusion that, when the appointment was made, the language used to describe the office appointed to serve process was purposely used with reference to its appropriate meaning in law. In these circumstances, it follows that there was no lawful service in any of these cases on appellant, for nothing is clearer than that a court, in order to render a valid judgment, must have jurisdiction of the persons of the parties—and in order to acquire jurisdiction of the person, a summons must be served as required by law. As the summons by an elisor was invalid, the motion to quash should have been granted. J. E. Petty & Co. v. Dock Co., supra; Higgins v. California Prune Growers (C.C.A.) 282 F. 550; Beard v. Smith, 9 Iowa, 50.

The order of the District Court in each case is therefore reversed and the cause remanded for further proceedings in accordance with this opinion, but without prejudice to each appellee's right to an order for a special process server under the rule.